Argued and submitted July 8, reversed and remanded for reconsideration of
compliance with goal five, otherwise affirmed October 30, 1985, reconsideration
allowed by opinion February 12, 1986
See 77 Or App 599, 714 P2d 279 (1986)

## 1000 FRIENDS OF OREGON,
*Petitioner,*
## OREGON ENVIRONMENTAL COUNCIL et al,
*Intervenors - Petitioners,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Respondents,*
## VERN SCOVELL et al,
*Intervenors - Respondents.*

## (84-ACK-061, AMENDED; CA A32117)

708 P2d 370

Richard P. Benner, Portland, argued the cause and filed the briefs for petitioner 1000 Friends of Oregon.

Terrance L. Thatcher, Portland, argued the cause and filed the briefs for intervenors - petitioners Oregon Environmental Council, Sierra Club, Audubon Society of Portland, League of Women Voters of Oregon and National Wildlife Federation.

Michael A. Holstun, Assistant Attorney General, Salem, argued the cause for respondent Land Conservation and Development Commission. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Mark Wehrly, Tillamook, filed the brief for respondent Tillamook County Board of Commissioners.

Diane Spies, Portland, argued the cause for intervenors - respondents Vern Scovell and Nehalem River Dredging Company. With her on the brief was Diane Spies and Associates, P. C., Portland.

Frank M. Parisi, Portland, argued the cause for intervenor - respondent Oregon Forest Industries Council. With him on the brief were Michael J. Lilly, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner 1000 Friends of Oregon and intervenor Oregon Environmental Council (OEC) seek review of LCDC's acknowledgment of Tillamook County's comprehensive plan and land use regulations. The principal issue is whether the county violated Goal 5 by electing to "rely" on the administration of the Forest Practices Act (FPA), ORS 527.610 *et seq,* rather than developing an independent program in its plan for resolving conflicts between identified Goal 5 resources and forest operations subject to the FPA.[1] The resolution of that issue turns on whether or to what extent the FPA prohibits counties from regulating forest operations on Goal 5 resource sites.

LCDC considered the relationship between two sections of the FPA, ORS 527.722 and 527.726, to be decisive of the inquiry. ORS 527.722 provides:

"(1)   Except as provided in subsection (2) of this section, no unit of local government shall adopt any rules, regulations or ordinances regulating the conduct on forest lands of forest operations governed by the Oregon Forest Practices Act or rules promulgated thereunder.

"(2)   Notwithstanding subsection (1) of this section, a city may adopt rules, regulations or ordinances regulating the conduct on forest lands of forest operations within city boundaries if those rules, regulations or ordinances establish standards equal to or more stringent than those established by the Oregon Forest Practices Act or rules promulgated thereunder."

ORS 527.726 provides:

"(1)   Nothing in ORS 527.722 and 527.724 is intended to preclude counties from performing their planning duties pursuant to ORS 197.005 to 197.430 and 197.610 to 197.850 with respect to forested lands by:

"(a)   Designating in comprehensive plans forested lands to be conserved in accordance with the state-wide planning goals;

---

[1] This issue underlies four of petitioner's assignments of error and all three of OEC's assignments. Because we conclude that LCDC's misinterpretation of the relationship between the FPA and the land use planning laws infected all of its Goal 5 analysis in this proceeding, it is unnecessary for us to discuss the seven assignments separately.

"(b)  Zoning forested lands for uses other than or complementary to commercial growing and harvesting of forest tree species in implementing a comprehensive plan; or

"(c)  Adopting rules, regulations or ordinances regulating forest operations on those forested lands zoned for primary uses other than the commercial growing and harvesting of forest tree species in accordance with the use or purpose for which those lands have been zoned.

"(2)  As used in this section, 'forested lands' means those lands upon which forest tree species are growing."

LCDC concluded:

"At the heart of the Commission's difficulty in determining what, if any, additional local regulatory measures should be required of counties to protect Goal 5 resources on forest land is the effect of ORS 527.722 and 527.726 on the ability of counties to regulate forest operations. A series of Attorney General opinions suggest that the critical determination is the meaning of ORS 527.726(1)(c) * * *. The legislative history of ORS 527.722-527.726 (HB 3008) does not provide clear direction regarding the Legislature's intended meaning of 527.726(1)(c). Lacking a clear definition or expression of intended meaning, the Commission has determined that with possible exceptions not relevant in Tillamook County, if commercial growing and harvesting of forest tree species is more than an incidental or insignificant use of the property under the zoning designation applied, it is a 'primary use.' If commercial growing and harvesting of forest tree species is one of several primary uses, the county may not regulate forest practices. Under ORS 527.726(1)(a) a county may adopt a zoning district which precludes commercial forestry. However, beyond that option the county is preempted from regulating forest operations unless forestry is an incidental or insignificant (nonprimary) use under the zoning designation adopted.

"* * * * *

"In its Goal 5 element the County has determined, through its ESEE analysis, that the Goal 5 resource sites and the conflicts identified, in view of protections affected by the FPA and cooperative agreement between the Board of Forestry and the Fish and Wildlife Commission, do not justify prohibiting commercial forestry. The County has therefore determined that notwithstanding the conflicts, commercial forestry should not be prohibited or relegated to insignificant use status. Having made that decision, whether or not the FPA is

an adequate 3(C) program as required by OAR 660-16-010(3), the County is preempted by ORS 527.722 from adopting additional measures to control forest practices. In those situations, where the County has adopted a 3(C) decision and the FPA as part of its program to limit conflicting uses so that the resource site is protect [sic] to some desired extent, the County is prevented by ORS 527.722 from attempting to make the conditions or standards in the FPA more clear or objective."[2]

We held in *1000 Friends v. LCDC,* 75 Or App 199, 706 P2d 987 (1985), that LCDC erred by acknowledging the provision of Coos County's Estuary Management plan which, instead of applying Goal 17 protections to five heron rookeries, purported to deal with the effect of logging operations near the rookeries by requiring the Department of Forestry to "enforce the Forest Practices Act and related rules 'in such a manner as to protect the natural values of the major marshes and significant wildlife habitat areas, and to maintain riparian vegetation.' " 75 Or App at 210. However, it was unnecessary in that case for us to answer the precise question before us here. We noted:

"We express no opinion on the Attorney General's view of county powers under ORS 527.722 as described in [Thatcher and Duhnkrack, 'Goal Five: The Orphan Child of Oregon Land Use Planning,' 14 Envir Law 713 (1984)]. We simply hold that the county has not, in this Plan, complied with Goal 17 or shown that it is powerless to do so." 75 Or App at 212, n 14.

The views of the Attorney General to which we referred in

---

[2] The term "3(C) decision" apparently refers to a local government's determination under OAR 660-16-010(3), part of LCDC's Goal 5 implementing rule, that

"* * * both the resource site and the conflicting use are important relative to each other, and that the ESEE consequences should be balanced so as to allow the *conflicting use but in a limited way so as to protect the resource site to some desired extent.* To implement this decision, the jurisdiction must designate with certainty what uses and activities are allowed fully, what uses and activities are not allowed at all and which uses are allowed conditionally, and what specific standards or limitations are placed on the permitted and conditional uses and activities for each resource site. Whatever mechanisms are used, they must be specific enough so that affected property owners are able to determine what uses and activites are allowed, not allowed, or allowed conditionally and under what clear and objective conditions or standards. Reasons which support this decision must be presented in the comprehensive plan, and plan and zone designations must be consistent with this decision."

*1000 Friends v. LCDC, supra,* correspond, with minor varia-
tions, to the view LCDC took in this proceeding of how the
FPA affects county planning authority and responsibility. We
conclude that LCDC's view is incorrect.

ORS 527.726(1) provides that nothing in ORS
527.722 precludes counties from performing their planning
duties pursuant to the land use statutes and goals by under-
taking the kinds of regulatory activities described in ORS
527.726(1)(a), (b) and (c). We do not agree with LCDC that
anything in the text, purpose or history[3] of the statute
suggests that the regulatory activities ORS 527.726(1) specifi-
cally allows should be understood as being more limited in
scope than the statute literally provides. Hence, we do not
share LCDC's understanding that the authorization in ORS
527.726(1)(c) for counties to zone lands "for primary uses
other than the commercial growing and harvesting of forest
tree species" does not obtain "if commercial growing and
harvesting * * * is more than an incidental or insignificant use
of the property under the zoning designation applied." As
OEC points out, LCDC's interpretation of ORS 527.726 would
"give counties authority to do no more than merely prohibit or
permit * * * forestry operations [outright]." OEC also notes,
correctly:

> "* * * The language [of the statute] further indicates that
> the legislature did not intend that the definition of 'primary
> use' — not actually defined in the statute — would be so broad
> that virtually any commercial forestry beyond an 'incidental'
> or 'insignificant' level would be construed as a 'primary use.'
> Giving the counties authority to regulate forestry operations
> implies that there will be operations to control. * * *"

In short, the quintessence of ORS 527.726(1)(c) is the author-
ity it gives counties to determine whether forest operations or
some other use is primary in a zone. LCDC's interpretation
effectively divests counties of that statutory authority.

Leaving aside the difficulties we have with LCDC's
interpretation of the language of ORS 527.726, we think that
the underlying problem is that it has viewed the FPA in a

---

[3] OEC and intervenor Oregon Forest Industries Council have called our attention
to episodes in the legislative history of the FPA. Unsurprisingly, the events to which
those parties refer tend to support the respective interpretations of the statute which
they espouse. We find the legislative history to be far more ambiguous than the statute.

vacuum. The general rule, and the correct starting point of the analysis, is that counties are *required* to exercise planning responsibilities over all land under their jurisdiction in accordance with the land use statutes and the goals. *See* ORS 197.175, 215.050. The FPA has regulatory objectives that differ from those of the land use laws. ORS 527.722 is aimed generally at preventing county intervention in the kind of regulation with which the FPA is concerned; however, ORS 527.726 has the manifest purpose of requiring counties to regulate forest operations in specified ways, *notwithstanding ORS 527.722,* when it is necessary that they do so to fulfill their land use planning duties.[4] Stated otherwise, ORS 527.726 is not simply a statement of exceptions to ORS 527.722; it is a savings clause which provides that ORS 527.722 does not eliminate county land use planning authority over forested lands. We hold that LCDC erred by concluding that the FPA has the preemptive effect that LCDC defined on the county's ability to apply Goal 5 and that LCDC erred by acknowledging the county's plan and regulations as complying with the goal. *See* note 4, *supra; see also 1000 Friends v. LCDC, supra,* 75 Or App at 211.

Petitioner makes a number of assignments directed at issues other than the one we have discussed. We hold those assignments to be without merit.

Reversed and remanded for reconsideration of compliance with Goal 5; otherwise affirmed.

---

[4] Although ORS 527.726 is ambiguous on the point ("Nothing in ORS 527.722 * * * is intended to *preclude* counties from performing their planning *duties*" (emphasis supplied)), we conclude that it is not optional with counties whether to invoke the planning measures that ORS 527.726(1) describes, when the invocation of those measures is necessary for the counties to comply with the land use statutes or the goals. Compliance with those statutes and goals is mandatory. ORS 527.726(1) cannot be construed as simply giving the counties discretion to do what other statutes require of them.