On respondent Tillamook County Board of Commissioners' reconsideration filed November 29, 1985; petitioner 1000 Friends of Oregon's reconsideration filed December 12, 1985; intervenor - respondent Oregon Forest Industries Council's reconsideration filed December 24, 1985; and respondent Land Conservation and Development Commission's reconsideration filed January 2, 1986; reconsideration granted, former opinion (76 Or App 33, 708 P2d 370) amplified and adhered to as amplified February 12, 1986

LCDC's reconsideration and Oregon Forest Industries Council's reconsideration denied April 11, 1000 Friends' reconsideration denied May 16, all petitions for review allowed July 1, 1986 (301 Or 320)

## 1000 FRIENDS OF OREGON,
*Petitioner,*

## OREGON ENVIRONMENTAL COUNCIL et al,
*Intervenors - Petitioners,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT COMMISSION et al,
*Respondents,*

## VERN SCOVELL et al,
*Intervenors - Respondents.*

(84-ACK-061, AMENDED; CA A32117)

714 P2d 279

Mark A. Wehrly, Tillamook, for respondent Tillamook County Board of Commissioners' petition.

Richard P. Benner, Portland, for petitioner 1000 Friends of Oregon's petition.

Frank M. Parisi and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, for intervenor - respondent Oregon Forest Industries Council's petition.

Dave Frohnmayer, Attorney General, William F. Gary, Deputy Attorney General, James E. Mountain, Jr., Solicitor General, and Jeff Bennett and Michael A. Holstun, Assistant Attorneys General, Salem, for respondent Land Conservation and Development Commission's petition.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner 1000 Friends of Oregon, respondent LCDC,[1] respondent Tillamook County and intervenor - respondent Oregon Forest Industries Council (OFIC) separately petition for Supreme Court review and, thereby, for this court's reconsideration of our former opinion. ORAP 10.10. We grant reconsideration primarily to address certain arguments raised in LCDC's petition.[2]

The principal issue in this case concerns the extent to which and the manner in which the Forest Practices Act (FPA), ORS 527.610 *et seq,* precludes the regulation of forest operations by counties in the exercise of their land use planning duties and, specifically, in their application of state-wide planning Goal 5. ORS 527.722(1) provides:

> "Except as provided in subsection (2) of this section, no unit of local government shall adopt any rules, regulations or ordinances regulating the conduct on forest lands of forest operations governed by the Oregon Forest Practices Act or rules promulgated thereunder."

ORS 527.726(1) provides:

> "Nothing in ORS 527.722 and 527.724 is intended to preclude counties from performing their planning duties pursuant to ORS 197.005 to 197.855 with respect to forested lands by:

> "(a)   Designating in comprehensive plans forested lands to be conserved in accordance with the state-wide planning goals;

> "(b)   Zoning forested lands for uses other than or complementary to commercial growing and harvesting of forest tree species in implementing a comprehensive plan; or

---

[1] The Department of Forestry joins in LCDC's petition for review. ORAP 5.18(3).

[2] Some of those arguments are similar in substance to arguments made by Tillamook County and OFIC. Only one unrelated argument by those parties requires separate comment. OFIC contends that the basis for our reversal of LCDC's acknowledgment order is hypothetical, because the legal error in the order could "have no effect on the status of the Tillamook County plan," which "zoned all its forested lands to permit commercial forest operations." Even assuming the correctness of OFIC's factual understanding, we do not agree that LCDC's interpretation of the way in which the FPA limits county zoning and regulatory authority could not have affected its approval of the county's decisions about whether and how to zone and regulate.

We adhere without discussion to the portions of our opinion which petitioner 1000 Friends of Oregon challenges.

"(c) Adopting rules, regulations or ordinances regulating forest operations on those forested lands zoned for primary uses other than the commercial growing and harvesting of forest tree species in accordance with the use or purpose for which those lands have been zoned."

LCDC explains in its petition how it considers that counties should apply Goal 5 when commercial forest operations subject to the FPA are involved:

"* * * In order to determine whether commercial forestry is a 'primary use' a county must:

"*Step 1*: Prepare an inventory of Goal 5 resources (OAR 660-16-000);

"*Step 2*: Identify those commercial forest operations which may conflict with these Goal 5 resources (OAR 660-16-005);

"*Step 3*: Perform an analysis of the ESEE consequences of allowing the forest operations (OAR 660-16-005(2)); and

"*Step 4*: Adopt a program based upon the ESEE analysis (OAR 660-16-010):

"a. If the ESEE analysis shows that the Goal 5 resource site is of such importance relative to commercial forestry that forest operations must be prohibited or forestry be relegated to an insignificant use or use incidental to the Goal 5 resources use, then zoning regulations may be adopted that affect forest operations.

"b. If the ESEE analysis shows that both commercial forestry and Goal 5 resource values are important, but that the relative value of the Goal 5 resource does not warrant imposition of the strict limitations that would render commercial forestry an incidental or insignificant (non-primary) use, then no regulation of forest practices may occur through zoning. ORS 527.726(1)(c)."

With the exception of LCDC's proposition that a non-forestry use can be designated as a primary use only if the conflicting forestry use is "insignificant or incidental," we agree with that explanation, and it is consistent with what we said in our former opinion. The exception is the focus of LCDC's principal disagreement with our opinion.

We rejected LCDC's construction of the term "primary uses" in ORS 527.726(1)(c). It interpreted the term as necessarily including all commercial forest operations except those that are "insignificant or incidental" when compared to a Goal 5 resource in an area, with the effect that only insignificant or incidental forest operations can be subject to county regulation. LCDC argues that our opinion "has turned ORS 527.726(1)(c) on its head"; that the purpose of the FPA is to create a system of uniform statewide regulation of commercial forest operations rather than a "balkanized" county-by-county scheme of regulation; and that our interpretation of ORS 527.726(1)(c) enables or requires counties to "[avoid] the preemptive effect of ORS 527.722 merely by labeling commercial forestry as a non-primary use." LCDC maintains:

> "This myopic analysis allows a county to avoid the preclusive effect of ORS 527.722 merely by regulating. The interpretation treats the statutory term 'primary use' as a mere non-substantive label. It also promotes local regulatory convenience in the face of a legislative mandate that uniform state regulation and administration be the rule rather than the exception. This could not have been the legislature's intent."

LCDC then concludes that "[t]he Court of Appeals erred by failing to recognize that ORS 527.726(1)(c) is incapable of literal interpretation."

■■ We continue to disagree with LCDC's view that ORS 527.726(1)(c) cannot or must not be applied as it is written, and we adhere to the interpretation that the statute creates an exception to ORS 527.722(1) and preserves the authority of counties to apply Goal 5 by deciding whether a commercial forestry use or a conflicting Goal 5 resource use is primary. LCDC's contrary understanding is not borne out by the language of ORS 527.726(1)(c) or the statute's other subsections. Subsection (1)(a) allows counties, without reservation, to designate "forested lands to be conserved in accordance with the state-wide planning goals"; subsection (1)(b) authorizes them, also without limitation, to zone "forested lands for uses other than [commercial forestry]." In short, there is nothing in ORS 527.726(1) that limits county regulatory authority to forested lands on which commercial forestry is merely insignificant or incidental, as distinct from forested

lands on which counties decide that a use other than commercial forestry should be protected or preferred.

We are well aware that, as LCDC argues, a literal reading of ORS 527.726(1) detracts from the objective of uniform regulation at which ORS 527.722 was clearly aimed. However, that reading is not optional. The statutes are not ambiguous; rather, they are internally ambivalent. It may be that the legislature intended to create the tension between uniformity under ORS 527.722 and whatever county planning authority that ORS 527.726 preserves. It may also be that the ultimate legislative product was a compromise between conflicting objectives, with the result that neither was achieved. In either event, any remedy must come from the legislature.

We turn to certain other concerns that LCDC expresses about our opinion. LCDC argues repeatedly in its petition that:

"* * * The essence of the court's holding is that the statute permits a county to regulate forest practices when it must do so to comply with Goal 5. This would be so, even if the zoning ordinance conflicts with requirements imposed on forest practices by the FPA. In effect, the court held that under ORS 527.726(1)(c), when a county regulates forest practices to achieve compliance with Goal 5, commercial forestry is relegated automatically to the status of a 'non-primary' use.

"* * * * *

"Under the Court of Appeals' rationale, if a county concludes that Goal 5 requires *any* regulation of forest practices, no matter how small, commercial forestry cannot be considered a primary use. This means, of course, that all a county need do to justify regulating forest practices, is to regulate them. * * *

"* * * * *

"The Court of Appeals effectively held that when a county regulates forest practices to comply with Goal 5, commercial forestry is relegated automatically to a 'non-primary' use under ORS 527.726(1)(c)." (Emphasis LCDC's.)

■■ We do not accept that reading of our opinion. Under Goal 5 and LCDC's implementing rule, OAR 660-16-000 *et seq,* there is nothing automatic about the designation of a Goal 5 resource *or* the designation of a commercial forestry use as primary. Only after the county concludes that the non-

forestry use is primary, *in the light of the goal's and the rule's criteria and procedures,* does the county's authority to regulate under ORS 527.726(1)(c) arise. We emphasize that a county's decision about whether a Goal 5 resource or a commercial forestry use is primary cannot be made arbitrarily. For example, a county could not elect to preserve a single robin's nest by prohibiting extensive ongoing commercial forest operations in the area where the nest is located. A county's Goal 5 decisions to protect resources and regulate uses must be justified by supporting reasons, and the decisions are subject to LCDC's review. *See* OAR 660-16-010.

For similar reasons, we do not agree with LCDC's characterization of our earlier opinion as making the term "primary uses" "a mere non-substantive label" that counties can use to circumvent the restrictions that ORS 527.722 places on their regulatory authority. The decision over whether a resource or a forestry use is primary is subject to the same substantive standards—and the same level of discretion —which apply to other decisions involving the extent of protection of resources and the extent of regulation of conflicting uses.

Reconsideration granted; former opinion amplified and adhered to as amplified.