Argued and submitted January 6, reversed and remanded for reconsideration
March 26, 1986

# 1000 FRIENDS OF OREGON,
## *Petitioner,*

*v.*

# LAND CONSERVATION AND
# DEVELOPMENT COMMISSION,
## *Respondent.*

## (84-CONT-383; CA A34869)

717 P2d 149

Robert L. Liberty, Portland, argued the cause and filed the briefs for petitioner.

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

D. Michael Wells and Hutchison, Anderson, Cox & Teising, P.C., Eugene, filed a brief *amicus curiae* for James Monroe and Andrew Heuberger.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

Petitioner seeks review of LCDC's continuance order in its compliance review of Linn County's comprehensive plan and land use regulations. ORS 197.251. In its first assignment, petitioner argues that LCDC erred by approving the county's "developed and committed" exceptions to Goals 3 or 4 for 20 areas, most of which are vacant and are contained within surrounding exception areas. Petitioner contends that the information the county submitted to LCDC in support of the challenged exceptions does not satisfy the requirements of ORS 197.732, Goal 2 and OAR 660-04-025 to 660-04-028, because it consists of "undigested" facts, does not address all of the concerns that the cited statute and rules require to be considered in connection with an exception based on commitment to nonresource uses, does not contain the required explanation of why "the facts support the conclusion that it is impracticable to apply the Goal" to the areas, OAR 660-04-028(3), and, in some instances, does not even make clear—or analyze accordingly—whether the exception taken is to Goal 3 or 4.

■ Petitioner is correct. The statutory and regulatory requirements governing the informational support for goal exceptions are detailed and clear. We have held repeatedly that LCDC must require local governments to comply with those requirements as a prerequisite to the acknowledgment of an exception. *See Lord v. LCDC,* 73 Or App 359, 361, 698 P2d 1026 (1985), and cases there cited. The county came nowhere close to complying here; therefore, LCDC erred in approving the exceptions.[1]

---

[1] Here, as in *Lord v. LCDC, supra,* a

"'* * * detailed discussion of the county's and LCDC's errors * * * would add nothing of authoritative substance to what we said in [our earlier] cases and, in the light of those cases, such a discussion should not be necessary to assist the county and LCDC in the further proceedings that our holding here requires." 73 Or App at 361.

The areas that are affected by our holding here, as the parties designate them, are:

| "A-2 | East Terra | NE vacant lots |
| A-3 | Peoria Road & Hwy. 34 | large central parcels |
| A-4 | Colorado Lake Road | northern parcels |
| L-7 | Lacombe & Koontz | scattered vacant peripheral parcels |
| N-4 | Shelburn & Coal Roads | NE parcels |

Petitioner contends in its second and third assignments that LCDC contravened Goals 11 and 14 by approving provisions of the county's "plan [and zoning ordinance] which allow new, urban (or nonrural) types, scales or intensities of development in rural areas" outside the urban growth boundary (UGB).[2] Petitioner argues that intense urban uses on rural land violate *those* goals, even if exceptions to the *resource* goals have been taken for the same territory, and that a separate exception to Goal 14 is necessary to permit urban level uses.

We held in *1000 Friends of Oregon v. LCDC,* 73 Or App 350, 698 P2d 1027, *rev allowed* 300 Or 111 (1985), that a county which had taken Goal 2 exceptions to Goals 3 and 4 to permit nonresource uses on agricultural and forest land outside the urban growth boundary was not required to take a separate exception to Goal 14 to authorize those uses. The parties agree that that case decides the issues raised by these assignments, although petitioner argues that our opinion was wrong and that it denuded Goal 14 of its objective—independent of the resource protection objectives of Goals 3 and 4—of

| N-7 | Stayton-Scio, etc. | Tax Lot 203 |
|---|---|---|
| N-8 | Cole School Road | southern tax lots |
| N-20 | East of Mill City | Central 100-acre ownership western portions |
| S-17 | Crawfordsville Dr. | Tax Lots 1000, 1100 |
| S-19 | Old Holley Road | Tax Lot 3501 |
| RC-1 | West Scio | Tax Lots 2400 |
| RC-2 | Crabtree | south end ownership |
| RC-3 | Lacomb | Tax Lot 400 |
| RC-8 | Cascadia | Tax Lots 1100, 1300, 2500 |
| C-19 | I-5 & Diamond Hill Road | undeveloped ownership |
| I-11 | Eastgate Center | all residential portions |
| I-21 | Echo Lumber Mill, etc. | undeveloped portions |
| I-29 | Hansen Warehouse | undeveloped portions |
| I-30 | Daniel's Field | undeveloped portions |
| I-33 | Morse Brothers | undeveloped portions" |

[2] Although the parties' briefs do not make it completely clear, some of the areas with which these assignments are concerned are apparently the same ones considered under petitioner's first assignment of error. To the extent that the same territory is involved, the county's and LCDC's actions pursuant to our remand on the exceptions issue may ultimately affect the permissibility of the urban uses challenged in the second and third assignments, independently of our disposition of these assignments.

confining urban development to the urban and urbanizable areas within UGBs.

■     Notwithstanding the parties' shared understanding that *1000 Friends of Oregon v. LCDC, supra,* 73 Or App at 350, is decisive here, we think that there is a difference between the two cases. The issue which we understood that we were deciding in our earlier opinion was whether a separate exception to Goal 14 was necessary to allow the same or substantially similar nonresource uses as those which were authorized by the exceptions to Goals 3 and 4 for the resource land in question.[3] Our concern was with redundancy in the exceptions process. The issue which we understand to be presented here is different. The exceptions to Goals 3 and 4 are based on a certain level of development or commitment which ostensibly renders the resource use of the land impracticable; however, petitioner's contention is that, even assuming the validity of those exceptions, the plan and ordinance provisions would allow much more intensive urban uses on the land than the existing uses which the county and LCDC offer as justifications for the exceptions. In other words, if the exceptions to Goals 3 and 4 are valid in the light of the *existing* development or commitment of the land, the *more intensive* development contemplated by the county's plan and ordinance could, nevertheless, violate Goals 11 and 14, according to petitioner. We agree. *See Perkins v. City of Rajneeshpuram,* 300 Or 1, 706 P2d 949 (1985), and *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985) (issued after our decision in *1000 Friends of Oregon v. LCDC, supra,* 73 Or App at 350). Our decision in *1000 Friends of Oregon v. LCDC, supra,* was not intended to resolve that question. It was premised on the understanding that the petitioner sought that we require two separate goal exceptions to allow a single use; it did not indicate (at least intentionally) that a planning jurisdiction was entitled to authorize certain uses without regard for Goals 11 and 14 simply because it had taken exceptions to Goals 3 and 4 on the basis of totally different uses.

In this case, we conclude that the county was required either to comply with Goals 11 and 14 or to take Goal 2

---

[3] The factual basis for our understanding *may* have been incorrect. The parties were far from explanatory about the uses and, for that matter, the goals which was the subject of their dispute. *See* 73 Or App at 356 n 3.

exceptions to them with respect to the land in question. On remand, LCDC should determine whether the plan and ordinance provisions comply with those goals in the light of this opinion and the Supreme Court's opinions in the *Perkins* and *Wasco County* cases.

Petitioner's final assignment, in which the *amici* join, is that LCDC erred by approving the county's ordinance provisions that purport to define when vested rights exist to conduct certain activities and uses.[4] Petitioner and the *amici*

---

[4] The challenged sections of the ordinance provide:

*"SECTION 2.100 VESTED RIGHT*

"1. A vested right shall be considered a legal use made nonconforming by a change in the zoning ordinance which was reasonably established and which is allowed to develop after adoption of this ordinance due to substantial investment prior to the effective date of the 1980 zoning ordinance.

"2. A vested right shall be deemed to exist if one or more of the following conditions are found to apply:

"a. approval has been granted by the Linn County Environmental Health Department authorizing the installation of a subsurface sewage disposal system, and a Certificate of Satisfactory Completion has been issued prior to the effective date of this ordinance; and/or

"b. actual construction has begun on a dwelling under a valid building permit issued by the Linn County Planning and Building Department prior to the effective date of this ordinance.

"3. If a vested right to develop can be established and verified, the Linn County Planning and Building Department shall be authorized to issue any and all necessary development permits to complete the vested development; however, the issuance of development permits shall be restricted by the degree of development anticipated at the time zoning standards were changed.

*"SECTION 2.110 PRIOR GOVERNMENT ACTION*

"1. Prior governmental action shall be considered authorization for development of a use permitted legally under the prior zoning standards which has become nonconforming due to a change in the 1980 zoning ordinance. Such authorization shall be deemed valid for purposes of final construction or commencement of activities under this ordinance, subject to the following limitations, and shall include:

"a. A valid mobile home placement permit issued by the Linn County Planning and Building Department, subject to placement of the mobile home within six (6) months from the effective date of this ordinance.

"b. A valid building permit issued by the Linn County Planning and Building Department, subject to completion of authorized construction within six (6) months from the effective date of this ordinance.

"c. A preliminary plat approved after September 7, 1978 which shall be

argue that the criteria that the ordinance establishes for the enjoyment of vested rights differ from, and are less stringent than, the tests established in Oregon appellate court decisions. *See, e.g., Polk County v. Martin,* 292 Or 69, 636 P2d 952 (1981). Consequently, they contend, the ordinance is inconsistent with the goals insofar as it would allow the continuation or completion of uses that are in conflict with the goals and that would not qualify as vested under the tests articulated in the case law.[5] LCDC argues in its brief here:

> "The existence or non-existence of vested rights is not a goal compliance issue. Vested rights are a species of property rights as affected by zoning and they are defined on a case by case basis.

> "Petitioner and amicus have chosen the wrong forum and the wrong time to litigate the propriety of the vested rights issue. The proper forum for such a challenge is * * * LUBA [in an appeal from] a land use decision based upon the ordinance. *Forman v. Clatsop County,* 297 Or 129, 132-33, 681 P2d 786 (1984)." (Citations omitted.)

■    LCDC is correct in contending that whether particular parties enjoy vested rights in particular situations is a matter for case-by-case determination. However, that proposition does not have any bearing on whether a local body violates the goals if it defines the tests to be applied in the case-by-case determinations or establishes incorrect tests for

honored when the final plat is submitted in a timely fashion in accordance with the Final Platting Procedures of the Linn County Revised Subdivision Ordinance of 1978.

"d. A conditional use permit authorized pursuant to Sub-Article 26.4 of ordinance #72-062, entitled the 1972 Linn County Zoning Ordinance, for location of a nonfarm related residence in the EFU district.

"e. A conditional use permit or variance authorized pursuant to ordinance #72-062, entitled the 1972 Linn County Zoning Ordinance, subject to completion of actual construction or authorized activities within six (6) months from the effective date of this ordinance.

"2. If any authorized development identified in sub-section one (1) above does not occur within the prescribed time frames, the right to develop under the 1972 zoning ordinance shall be deemed to have expired, and all subsequent development shall comply with provisions of this ordinance."

[5] Although the county provisions do not specifically mention vested rights in uses that *violate the goals,* their *necessary operation* would *be to allow the continuation or* completion of such uses if they meet the tests set forth in the provisions. All of those tests turn on the permissibility of uses under former county land use regulations.

the allowance of uses that are contrary to the goals. The issue here is whether the county's plan and regulations comply with the statewide planning goals, and the ordinance's vested rights provisions are as much subject to goal compliance review as any other provisions of the county's land use regulations.

The challenged provisions were adopted in 1980, long after the goals were promulgated. The provisions ostensibly make conformance with pre-1980 county legislation the principal determinant of whether a vested right exists. That legislation was never acknowledged to be in compliance with the goals, and the county's vested rights provisions do not make the protected status of a use dependent in any way on whether the use commenced before the adoption of the goals or was ever in compliance with them. In short, the vested rights provisions, as they apply to uses that are inconsistent with the goals, would create a grandfather clause where there is no grandparental lineage; on their face, they would insulate certain uses from the application of the goals, even if the uses violated the goals from their inception.

Although we need not decide the question here, we assume that, if a use had begun before the goals were promulgated and if a vested right in the use arose by virtue of its consistency with existing county legislation and its satisfaction of the other tests the courts have enunciated for the enjoyment of a vested right, the use would be as insulated from the goals as it would be from changes in the county legislation. However, that is not the problem here. The provisions petitioner and the *amici* challenge do not establish substantive regulations of the use of land; they purport to define the conditions under which compliance with prior county legislation makes a use impervious to *any* regulation other than the prior county legislation with which the use complied. It is simply not compatible with Oregon's statewide land use regulatory scheme for a county to be able to legislate, in the guise of a definition of "vested rights," whether state regulations can be applied to the use of land within the county's territory. *See Mason v. Mountain River Estates,* 73 Or App 334, 340 n 6, 698 P2d 529, *rev den* 299 Or 314 (1985).[6] We

---

[6] Our holding pertains to the county's vested rights provisions as they affect uses that are inconsistent with the goals. Whether the provisions are valid in any other connection is a question that goes beyond the subject of the present proceeding.

conclude that petitioner's fourth assignment of error is also well taken.

Reversed and remanded for reconsideration.