Argued and submitted May 14, reversed and remanded August 6, 1986

# 1000 FRIENDS OF OREGON et al,
*Respondents,*

*v.*

# WASCO COUNTY COURT et al,
*Respondent,*

*and*

# CITY OF RAJNEESHPURAM et al,
*Petitioners.*

(81-132; CA A39453)

723 P2d 1039

Corinne C. Sherton, Eugene, argued the cause for petitioners. With her on the brief was Rex Armstrong, Portland.

Robert E. Stacey, Jr., Portland, argued the cause for respondents. With him on the brief was Mark J. Greenfield, Portland.

No appearance for respondent Wasco County Court.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Rajneesh Foundation International and the City of Rajneeshpuram seek review of an order by which LUBA remanded to Wasco County its decision to authorize an election to incorporate the city. Under the terms of the remand from the Supreme Court, LUBA was to determine whether there was substantial evidence in the whole record to support the county's finding that "the area proposed for incorporation is not suitable for farm use." LUBA held that there was no substantial evidence for that finding. We reverse.

This case and its companion, *1000 Friends v. Wasco County Court,* 80 Or App 532, 723 P2d 1034 (1986), are the latest stage of a continuing challenge to the incorporation of Rajneeshpuram. *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1983) (*Wasco County IV*); *1000 Friends of Oregon v. Wasco County Court,* 68 Or App 765, 686 P2d 375 (1984), *modified* 299 Or 344, 703 P2d 207 (1984) (*Wasco County III*); *1000 Friends of Oregon v. Wasco County Court,* 67 Or App 418, 679 P2d 320, *withdrawn on rehearing in banc,* 68 Or App 765 (1984) (*Wasco County II*); *1000 Friends of Oregon v. Wasco Co. Court,* 62 Or App 75, 659 P2d 1001, *rev den* 295 Or 259 (1983) (*Wasco County I*). The background and previous history of the legal aspects of the Rajneeshpuram controversy can be found in those opinions. In *Wasco County IV* the Supreme Court rejected most of the challenges to the county's decision but held that two of them required further LUBA consideration. This case involves the county's determination that Goal 3 does not apply to its decision, because the land proposed for incorporation is not suitable for agricultural use and, therefore, is not agricultural land to which the goal is applicable. LUBA reversed and remanded that determination.

Because the Supreme Court's remand to LUBA sets the issues in this case, we must first determine the nature of the remand. We begin with an examination of the application of Goal 3 to the proposed incorporation. That goal requires the county to preserve and maintain agricultural lands "for farm use, consistent with existing and future needs for agricultural products, forest and open space." The goal required the county, in passing on an incorporation petition, to satisfy itself that it was reasonably likely that the proposed city, after

incorporation, would comply with the goal. *See Wasco County IV,* 299 Or at 359-360. However, the county needed to consider Goal 3 only if the proposed city consisted of "agricultural land" as defined by the goal:

> "[Agricultural land] in Western Oregon is land of predominantly Class I, II, III and IV soils and in Eastern Oregon is land of predominantly Class I, II, III, IV, V and VI soils as identified in the Soil Capability Classification System of the United States Soil Conservation Service, and other lands which are suitable for farm use taking into consideration soil fertility, suitability for grazing, climatic conditions, existing and future availability of water for farm irrigation purposes, existing land use patterns, technological and energy inputs required, or accepted farming practices. Lands in other classes which are necessary to permit farm practices to be undertaken on adjacent or nearby lands, shall be included as agricultural land in any event."

The county, in findings which respondents[1] did not challenge, determined that the soil within the proposed city consisted of 61 percent Class VII and VIII soils, 35 percent Class VI soils and 4 percent Class II through IV soils. The county also found that the Class II-IV soils would be preserved for agricultural use, that the proposed city contained predominantly Class VII and VIII soils and that those soils were not suitable for farm use. The county did not consider Goal 3 issues any further, because under its findings the goal did not apply. If its findings are supportable, its action was correct.

The definition of agricultural lands appears to make Class I-VI soils automatically agricultural land; other lands may also be agricultural if they are suitable for farm use. In *Wasco County IV,* the court concluded that LUBA had erred in its previous decision by requiring that the county's suitability evaluation consider the entire ranch rather than simply the area proposed for incorporation. Because of that error, LUBA had not yet decided whether the county's determination met the Goal 3 suitability tests. The court then remanded the case so that LUBA could decide whether the county's finding that "the area proposed for incorporation is not

---

[1] Although the county is a respondent on review, it did not appear in this court. By "respondents" we refer to 1000 Friends of Oregon and the other original petitioners before LUBA.

suitable for farm use" was supported by substantial evidence in the whole record.[2]

Although they do so now, respondents did not explicitly attack the *adequacy* of the county's findings on suitability for agricultural use of the area proposed for incorporation in their original appeal to LUBA. Instead, they attacked the evidentiary support for those findings, particularly the evidence supporting the county's finding that the lands would not support grazing without extensive reclamation. Their contention that the county's findings were not supported by substantial evidence, however, implicity also attacked some of the county's reasoning. Respondents recognized that reclamation was necessary in order for the lands to be suitable for grazing. They argued that, because the county had not shown that reclamation was impossible, the land was necessarily suitable other land and was therefore agricultural.

In short, respondents did not attack the county's *explicit* findings—with which, indeed, they generally agreed—but rather attacked its *implicit* finding that the reclamation necessary to restore the land to productivity was so difficult that it was impracticable. Respondents did not, however, challenge the county's failure to make this implicit finding an explicit one. Thus, when the Supreme Court remanded the case for a substantial evidence determination, it in effect asked LUBA to rule on the issue as respondents originally presented it: whether there is substantial evidence to support the county's implicit finding that reclamation of the land within the proposed city would be so difficult that it is impractical. We turn to that issue.

■    The county's relevant explicit findings are:

"Expert testimony has established that the area proposed for incorporation is not suitable for farm use. The record reveals that the Class VI soils in the area, as well as the bulk of the entire ranch, have been historically over-grazed and will not support grazing uses without extensive reformation and land management activities. Due to soil fertility and slope limitations, these lands are similarly unavailable for row crop

---

[2] It may be that the Supreme Court assumed that Class I through VI soils might not be agricultural land if they failed the suitability test. We need not decide that point, because, as we discuss below, a suitability determination is necessary in this case in any event.

or other cultivation practices. The limited amount of Class II-IV soils included within the proposed boundary have been, and will continue to be, cultivated and otherwise preserved for agricultural use."

There is substantial evidence in the record that the lands proposed for incorporation have been overgrazed and cannot support continued grazing without significant reclamation efforts. There is also substantial evidence that the land is unavailable for row crop or other cultivation practices.[3] Because the soils are predominately Class VII and VIII, we must evaluate the county's implicit finding that reclamation was impractical by examining the evidence relevant to the suitability factors in the definition of agricultural lands.[4]

■     Read most favorably to the county's findings, the evidence shows that most, and possibly all, of the Class VII soils are not suited for management.[5] Although the soil survey placed in evidence does state that the Class VI soils are suited to management, that fact is irrelevant, for those soils would be agricultural lands in any event if they were the predominant soils in the area. The Wasco County Soil and Water Conservation District, in a letter placed in the record, noted the substantial growth of undesirable grasses in the area in question and suggested two possible methods for restoring the native grasses. The first method is to plant at least two crops of small grains to remove the weed seeds from the soil before reseeding to native grasses. Because of the character of the soils, the district believed that that approach would be

---

[3] The parties disagree on whether we should apply the "any evidence" or the "whole record" standard in determining whether there is substantial evidence in this case. *See Brown v. AFSD,* 75 Or App 98, 102-104, 705 P2d 236 (1985), *rev den* 300 Or 477 (1986) (Gillette, J., concurring). We conclude that there is substantial evidence for the county's findings under either standard.

[4] Because the adequacy of the findings other than the implicit ultimate finding that reclamation was impractical is not at issue under the Supreme Court's remand, we consider any evidence which might support that ultimate finding, whether or not the county formally found in accordance with it.

[5] The only possible exception is Tub very stony soils, 1 to 20 percent slopes, which the soil survey in the record places in the Droughty Rolling Hills range site. The survey indicates that *some* areas in that range site are suited to management. However, the survey suggests that those areas consist of Tub gravelly clay loam, 1 to 12 percent slopes and McMeen Silt Loam, 1 to 12 percent slopes, both of which are Class III soils. The county could conclude that the Class VII Tub very stony soils, 1 to 20 percent slopes, are not suited to management. The soil survey does not even suggest that any other Class VII soils are suited to management.

unlikely to succeed. The other possible method was to control the weeds with chemicals and then reseed; however, the weed seeds present in the soil would also make establishment of a new stand of native grasses by this method difficult.

■■ Those facts are sufficient to support a finding that the land proposed for incorporation is not "other lands which are suitable for farm use" within the agricultural lands definition. The inherent marginal quality of the land, its overgrazed condition and the difficulty of restoring it to its previous limited productivity, even with significant effort, support such a finding. Although, as LUBA noted in reversing the county's decision, the record could be more complete on how much effort reclamation would take and what it might achieve, that incompleteness does not preclude the county from reaching a decision on the basis of facts that were available. The evidence of the soil survey that the Class VII soils were not reclaimable is in itself sufficient to support the county's findings. The county could also find that, even it were possible, reclamation would require significant technological and energy expenditures and that the result might not be worth the effort. Greater precision is not necessary under the terms of the Supreme Court's remand.

■■ Respondents argue that the expressed intention of the proponents of the city to rehabilitate similar land outside the proposed city limits supports the conclusion that the land inside the city is agricultural land. If so, it is not conclusive. It might be that the proponents intended to concentrate on the Class VI soils, that they might not succeed or that they might find that their costs were greater than the returns. Also, there is no presumption that the land is agricultural land simply because of its previous agricultural use. Previous use is merely one factor for the county to consider in reaching its conclusion about the land's *current* condition. It might even, as in this case, indicate that marginal land has been so heavily used that it has lost its limited suitability for agricultural purposes.

In conclusion, we hold that LUBA erred in its determination that the county's findings were not supported by substantial evidence. We therefore reverse its decision and remand the case to it.

Reversed and remanded.