Argued and submitted September 2, 1986, affirmed January 21, 1987

# 1000 FRIENDS OF OREGON,
*Petitioner on review,*
# OREGON ENVIRONMENTAL COUNCIL et al,
*Petitioners,*

*v.*

# LAND CONSERVATION
# AND DEVELOPMENT COMMISSION et al,
*Respondents on review,*
# SCOVELL et al,
*Respondents on review,*
# OREGON FOREST INDUSTRIES COUNCIL,
*Respondent.*

## (84-ACK-061, AMENDED; CA A32117; SC S32395)

731 P2d 1015

Richard P. Benner, Portland, argued the cause and filed petition on behalf of petitioner on review.

Diane Spies, Portland, argued the cause on behalf of respondents on review Vern Scovell, Nehalem River Dredging Company.

GILLETTE, J.

## GILLETTE, J.

This is a land use case in which petitioner, 1000 Friends of Oregon (1000 Friends), challenges a portion of an order of the Land Conservation and Development Commission (LCDC) acknowledging a comprehensive plan submitted by Tillamook County (the county).[1] In its acknowledgment order, LCDC approved the county's exceptions to the Estuarine Resources Goal (Goal 16) for the proposed construction of a marina, motel, recreational vehicle park, restaurant and shops on a 24.25-acre salt marsh located in the Nehalem estuary and known as Botts Marsh. The Botts Marsh project calls for dredging 9.77 acres of salt marsh to provide moorage for 200 boats and filling 14.48 acres of salt marsh to accommodate the non-water dependent uses. 1000 Friends petitioned for judicial review of LCDC's acknowledgment order, arguing, *inter alia,* that LCDC did not adequately consider alternative upland sites for the non-water dependent uses and for boat storage. The Court of Appeals found the claims of 1000 Friends to be without merit. *1000 Friends of Oregon v. LCDC (Tillamook Co.),* 76 Or App 33, 40, 708 P2d 370 (1985). We granted review to consider these issues.[2] We affirm.

Goal 16 authorizes dredge and fill operations under the following conditions:

"(1) [I]f required for navigation or other water-dependent uses that require an estuarine location; and

"(2) if a public need is demonstrated; and

"(3) if no alternative upland locations exist; and

"(4) if adverse impacts are minimized as much as feasible."

Because the proposed project included non-water dependent uses, the county adopted an exception to the first criterion

---

[1] Other portions of the LCDC acknowledgment order, relating to application of the Forest Practices Act, remain under consideration by this court in cases S32358, S32693 and S32702.

[2] 1000 Friends raised several other issues in its brief before the Court of Appeals. However, it limited its petition for review here to consideration of these two issues.

listed above.[3] Respondents argue that this exception also excused the county from complying with the requirement of the third criterion that "no alternative upland locations exist." 1000 Friends argues that the exception to the first criterion does not obviate the need to comply with the third.

■     We agree with 1000 Friends that the county cannot, by adopting an exception to one discrete portion of a goal, circumvent the remaining requirements of that goal. Goal 16 is comprised of a number of distinct requirements. The county must comply with each distinct requirement in Goal 16 unless it can justify an exception to that requirement. In this case, with respect to the dredge and fill policy of Goal 16, the county in so many words adopted only an exception to the first criterion. However, it is possible that the county also took, by implication, an exception to the third criterion, or that no such exception was necessary. We turn to an examination of these two questions.

■     1000 Friends correctly acknowledges that there is some redundancy between the dredge and fill criteria and the exceptions criteria. Both, for example, require a showing of need. *See* OAR 660-04-022(1) and the second dredge and fill criterion of Goal 16. It is possible that, in justifying an exception to the first dredge and fill criterion, the county necessarily satisfied itself that there were no alternatives to dredging and filling. The first question we must consider, therefore, is whether the third dredge and fill criterion requires consideration of matters which the county did not consider in adopting its exception to the first criterion. *See 1000 Friends v. LCDC (Curry Co.),* 301 Or 447, 469, 724 P2d 268 (1986).

Before taking an exception to a goal or a portion thereof, the county must meet the requirements of ORS 197.732(1)(c). That statute provides, in part:

---

[3] An exception is "* * * essentially a variance that allows state land use goal requirements to be waived where, for some compelling reason, it is 'not possible to apply the appropriate goal to specific properties or situations.' " *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 352, 703 P2d 207 (1985) (citation omitted.) The county also took an exception to that portion of Goal 16 which requires the county to divide each estuary into natural, conservation, and development management units. The county determined that Botts Marsh had the characteristics of either a natural or a conservation management unit, neither of which authorizes non-water dependent uses. The county took an exception to this portion of Goal 16 so that it could classify Botts Marsh as a development management unit, which would allow non-water dependent uses.

> "A local government may adopt an exception to a goal when:
>
> "* * * * *
>
> "(c)   The following standards are met:
>
> "* * * * *
>
> "(B)   Areas which do not require a new exception cannot reasonably accommodate the use * * *."

OAR 660-04-020(2)(b)(C), the administrative rule promulgated under ORS 197.732(1)(c), provides:

> "This alternative area standard can be met by a broad review of similar types of areas rather than a review of specific alternative sites. Initially, a local government adopting an exception need assess only whether those similar types of areas in the vicinity could not reasonably accommodate the proposed use. Site specific comparisons are not required of a local government taking an exception, unless another party to the local proceeding can describe why there are specific sites that can more reasonably accommodate the proposed use. * * *."

The county here adopted an exception to the first criterion limiting dredge and fill operations to water-dependent uses. Under the standards set out above, it was required to consider as alternatives only "similar types of areas in the vicinity;" it was not required to address the availability of specific alternative upland locations for the non-water dependent uses. In addition, because boat moorage is a permissible water-dependent use under the first dredge and fill criterion, it was unnecessary for the county to consider at all upland alternatives to boat moorage (*i.e.,* dry storage) for the purposes of the exception. In adopting the exception to the first dredge and fill criterion, therefore, the county did not necessarily satisfy the third criterion with respect to either the non-water dependent uses or boat storage.

It follows from the foregoing that the county was required to evaluate separately the availability of alternative upland locations in order to satisfy the third criterion for dredge and fill operations under Goal 16. We conclude, however, that it did so and that substantial evidence supports its findings that there were no satisfactory alternatives.

In acknowledging the plan, LCDC adopted the

county's finding that "[Botts Marsh] is the only site on Nehalem Bay with the physical characteristics suitable for a weather-protected, full-service boat basin development." In addition, LCDC adopted the county's finding that:

> "[D]ry storage is not a substitute for protected wet moorage for boat-owners who are year-round users, but instead serves a different clientele of owners who use their generally smaller boats less often and are willing to accomodate [sic] the inconvenience involved in getting them out of storage and into the water and back."

The record shows that dry storage is incorporated into the proposed marina project. Its purpose, however, is to supplement, rather than to replace, wet moorage. The county included wet moorage as part of the project in order to create an integrated marina complex. In addition, the county considered using moorage space at existing marinas in other locations. It rejected this alternative because existing marinas lacked the capacity to provide sufficient moorage spaces and were not sufficiently protected from winter storms to allow year-round use.

The county also considered and rejected proposed alternative locations for the non-water dependent uses. The 7.5-acre site proposed by 1000 Friends had been committed to other uses in conjunction with the marina complex. Within the city of Wheeler's urban growth boundary — another alternative site urged by 1000 Friends — the county found that "[o]f the 42 acres of buildable commercial/industrial land in the Wheeler UGB cited by the staff, less than one acre occurs in two small sites on the Wheeler waterfront which might accommodate water-dependent or water-related uses related to the recreation-tourism sector of the economy." In addition, the county's exception justification statement, adopted by LCDC, states that:

> "1000 Friends provides no documentation for the statement that 'The City of Wheeler's UGB can accom[m]odate all of these uses.' No sites are specifically noted, their areas are not given and there is no evidence given that the uses proposed for the exception area could or would want to locate elsewhere within the Wheeler UGB. All uses proposed in the project were specifically selected and located because they reflect the characteristics of successful marina and marine harbor developments up and down the Pacific Coast. The

opposition to development of such a facility in a planned, logical fashion, as proposed in this project, instead of just letting unplanned uses scatter themselves helter-skelter throughout the community, is incomprehensible."

The Botts Marsh project was designed as an integrated marina complex. In adopting its exceptions to Goal 16, the county was required to demonstrate a public need for such a complex. OAR 660-04-022(1)(a). 1000 Friends does not challenge in this court LCDC's finding that such a need exists. Neither does it contend that alternative sites exist for the complex as a whole. Rather, it suggests that the complex be broken up and its component uses placed at various upland locations.

We agree with respondents that the third criterion under Goal 16 does not require this course of action, which would destroy the integrity of the project and largely defeat the purpose for which it was designed. The county was entitled to reject such an alternative. The manner in which it went about making its finding that Botts Marsh was the only suitable site for the marina complex was sufficient to demonstrate that "no alternative upland locations exist," thereby satisfying the third criterion of the dredge and fill conditions under Goal 16.

That portion of the decision of the Court of Appeals in case A32117 affirming the acknowledgment by the Land Conservation and Development Commission of the portion of the Tillamook County comprehensive plan relating to Botts Marsh is affirmed; that portion of Land Conservation and Development Commission order number 84-ACK-061, amended, relating to Botts Marsh is affirmed.