Argued and submitted December 22, 1986, reversed and remanded April 22, 1000
Friends' reconsideration and intervenor Ogden's reconsideration denied and
respondent LCDC's reconsideration allowed by opinion June 24, 1987
See 86 Or App 26, 738 P2d 215 (1987)
1000 Friends' petition for review and Ogden's petition for review denied
September 9, 1987 (304 Or 93)

# 1000 FRIENDS OF OREGON,
*Petitioner,*

# MASON,
*Intervenor - Petitioner,*

*v.*

# LAND CONSERVATION
# AND DEVELOPMENT COMMISSION,
*Respondent,*

# LINN COUNTY et al,
*Intervenors - Respondents.*

## (LCDC 85-ACK-120; CA A37227)

735 P2d 645

Robert L. Liberty, Portland, argued the cause and filed the briefs for petitioner.

Jas. J. Adams, Portland, argued the cause and filed the briefs for intervenor - petitioner.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael A. Holstun, Assistant Attorney General, Salem.

Allison E. Smith, Albany, argued the cause for intervenor - respondent Linn County. With him on the brief was Jackson L. Frost, District Attorney, Albany.

Edward F. Schultz, Albany, argued the cause for intervenor - respondent Douglas Ogden. With him on the brief was Weatherford, Thompson, Brickey & Powers, P.C., Albany.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

Deits, J., concurring.

## RICHARDSON, P. J.

Petitioner and intervenor Mason seek review of LCDC's order acknowledging Linn County's comprehensive plan and land use regulations. We turn first to Mason's contentions, which relate to LCDC's approval of the county's Freeway Interchange Commercial (FIC) designation of a 22-acre parcel owned by intervenor Ogden. Mason argues that the parcel is comprised predominantly of agricultural land and that the FIC designation would allow urban and non-agricultural uses which are not permissible on agricultural land under Goals 3, 11 and 14.[1]

The county concluded that the Ogden parcel is not "agricultural land," as defined in Goal 3. That goal provides that, in western Oregon, "land of predominantly Class I, II, III and IV soils * * * as identified in the Soil Capability Classification System of the United States Soil Conservation Service, *and other lands* which are suitable for farm use [under various criteria]" are "agricultural land." (Emphasis supplied.) LCDC's interpretive rule, codified as OAR 660-05-005, provides in part:

"(1) 'Agricultural land' as defined in Goal 3 includes:

"(a) Lands classified by the U.S. Soil Conservation Service (SCS) as predominately Class I-IV soils in Western Oregon and I-VI soils in Eastern Oregon;

"(b) *Other lands in different soil classes* which are suitable for farm use as defined in ORS 215.203(2)(a), taking into consideration [various factors]." (Emphasis supplied.)

Mason maintains that the parcel consists almost entirely of Class II to IV soils and that that in itself conclusively brings the parcel within the goal's and the rule's definition of agricultural land. Only one of Ogden's[2] arguments to the contrary merits discussion. That argument is based on the Supreme Court's *dictum* in *1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 703 P2d 207 (1985):

"Soils classified I-IV in western Oregon, or I-VI in eastern

---

[1] Petitioner joins in Mason's arguments regarding the Ogden parcel, but does not address the issue at length in its own briefs.

[2] Respondent LCDC does not address the issue in its brief, and intervenor-respondent Linn County addresses the Ogden parcel only in passing.

Oregon, are *presumptively* 'agricultural' under Goal 3. The soil classification system identifies the nature of the soil, without consideration of other environmental factors which may affect its use.

"The question under Goal 3 of whether an area is suitable for farm use is entirely different. The suitability determination requires a governing body to look beyond the scientific soil classification taken alone to other factors such as 'soil fertility, suitability for grazing, climatic conditions, existing and future availability of water for farm irrigation purposes, existing land use patterns, technological and energy inputs required, or accepted farming practices.' *Land with soil scientifically classified as a priority soil class, e.g., Class I, may be unsuitable for farm use because of other factors, such as slope.* Conversely, land consisting of low priority soil classes may nonetheless be determined to be suitable for farm use when other factors are considered, or because that land is necessary to permit farm practices to be undertaken on adjacent or nearby lands." 299 Or at 371-72. (Emphasis supplied.)[3]

Ogden understands that language to mean that the county was entitled to and did consider factors other than soil classification, such as slope and wetness, in determining whether his land is agricultural. Mason responds, first, that the court's language does not necessarily mean that land comprised of the specified soil classes is removed from the category of agricultural land if it is determined to be unsuitable for agricultural use; and, second, that, if that is the meaning of the language, the court was wrong and we are not obliged to follow its *dictum.* Mason premises his second point on the reasonably clear language of Goal 3 and the unequivocal language of OAR 660-05-005(1) to the effect that land comprised of the specified soil classes is *per se* agricultural and that suitability considerations are relevant only to whether land which is *not* predominantly comprised of such soils is *also* "agricultural land."

Mason is correct and, if the quoted language from

---

[3] In *1000 Friends of Oregon v. Wasco Co. Court,* 80 Or App 525, 723 P2d 1039 (1986), a subsequent decision in the same proceeding, we referred to the Supreme Court's *dictum* and noted:

"It may be that the Supreme Court assumed that Class I through VI soils might not be agricultural land if they failed the suitability test. We need not decide that point, because, as we discuss below, a suitability determination is necessary in this case in any event." 80 Or App at 529, n 2.

*Wasco County Court* was meant to suggest a principle contrary to his argument, we agree with Mason that the language was "gratuitous" and does not bind us. It may be that factors such as wetness and slope can be relevant to whether an exception to Goal 3 may be taken for land in western Oregon that consists predominantly of Class I-IV soils. However, the goal and the LCDC rule leave no room to conclude that land which is so comprised is not, *per se*, "agricultural land," whether or not it can be used for agriculture.[4] Mason is also correct in his assertion that the FIC designation of the parcel requires an exception to Goal 14. *1000 Friends of Oregon v. LCDC (Curry Co.),* 301 Or 447, 724 P2d 268 (1986); *1000 Friends of Oregon v. LCDC (Linn Co.),* 78 Or App 270, 717 P2d 149 (1986).

■       We turn to petitioner's eleven assignments which do not incorporate those advanced by Mason. The first four challenge, respectively, the county's provisions governing dwellings on and divisions of agricultural land and forest land. We find the only cognizable point in petitioner's arguments under these assignments to be that the provisions lack sufficiently specific standards to assure that, in implementing them, the county will comply with applicable statewide statutes, goals and other regulations. In fact, the county provisions replicate the standards of the statutes, goals and regulations and contain substantial refining standards beyond that. As evidence that the county's provisions have not and will not suffice to prevent it from violating the state requirements, petitioner presents several historical examples of what it asserts are land use decisions in which the county has acted inconsistently with the requirements. Those decisions are not before us. Even assuming they were incorrect, that is not the issue. The issue is whether the plan and regulations comply with the goals.

Petitioner seems to be of the view that comprehensive plans and land use regulations must be so specific that they are virtually self-executing and impervious to erroneous application by local decision-makers. Petitioner's expectation is, in the nature of things, an impossible one. If recognition of so self-evident a fact were necessary, the legislature appears to

---

[4] It is neither our function (nor the Supreme Court's) to decide whether the latter's comment in *Wasco County Court* is more sensible in substance than the goal we interpret.

have recognized through the creation and perpetuation of LUBA that plans and ordinances must be implemented and applied to particular facts by local officials and bodies and that their initial decisions will not always be correct. All that *can* be required of plans and land use regulations is that they be consistent with state law and specific enough so that they are susceptible to proper interpretations and applications in the decision-making process. Petitioner points to nothing that is present in or missing from the provisions that it challenges which persuades us that the requisite consistency with state requirements or capability of proper application is lacking.

Petitioner and LCDC rely—for opposite purposes—on *Doughton v. Douglas County,* 82 Or App 444, 728 P2d 887 (1986), *rev den* 303 Or 74 (1987). That case is inapposite. We held that the term "customarily provided in conjunction with farm use" in ORS 215.283(1)(f) and in Douglas County's regulations did not provide "clear and objective standards" capable of *ministerial* application. Consequently, we concluded that a decision under the county provision did not come within the "ministerial decision" exception to land use decisions subject to LUBA's jurisdiction. ORS 197.015(10)(b). However, *Doughton* does not say or suggest that all standards which are embodied in county plans and ordinances must or can provide such specificity that they leave nothing for governing bodies and planning commissions to do except act ministerially. There is no basis for reversal in petitioner's first four assignments.

Its next three assignments challenge LCDC's approval of the plan's provisions making the Forest Practices Act, ORS 527.610 *et seq,* and the rules and other components of the program under that act, the basis for county decisions and regulations concerning certain Goal 5 resources. We agree that the county and LCDC erred in those respects. *1000 Friends of Oregon v. LCDC,* 76 Or App 33, 708 P2d 370 (1985), *on reconsideration* 77 Or App 599, 714 P2d 279, *rev allowed* 301 Or 320 (1986).

Petitioner makes four further assignments. They do not demonstrate error or require comment.

On both petitioner's and intervenor Mason's petitions, reversed and remanded for further proceedings not inconsistent with this opinion.

**DEITS, J.,** concurring.

With respect to the assignments of error challenging LCDC's approval of the county's reliance on the the Forest Practices Act to implement Goal 5, although I agree that *1000 Friends of Oregon v. LCDC,* 76 Or App 33, 708 P2d 370 (1985), *on reconsideration* 77 Or App 599, 714 P2d 279, *rev allowed* 301 Or 320 (1986), requires the court to conclude that LCDC erred, I do not agree that that case correctly interprets the law.