Argued and submitted September 2, 1986, the decision of the Court of Appeals is
reversed and order of Land Conservation Development Commission is affirmed,
May 27, 1987

## 1000 FRIENDS OF OREGON et al,
*Respondents on Review,*

*v.*

## LAND CONSERVATION AND DEVELOPMENT
## COMMISSION et al,
*Petitioners on Review,*

## SCOVELL et al,
*Respondents.*

(84-ACK-061 Amended; CA A32117;
SC S32693, S32358, S32702)

737 P2d 607

Michael A. Holstun, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review Land Conservation and Development Commission. With him on the petition were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General and Jeff Bennett, Assistant Attorney General, Salem.

Fred Young, Tillamook, argued the cause for petitioner on review Tillamook County. On the petition was Mark A. Wehrly, Tillamook.

Frank M. Parisi, Portland, argued the cause for petitioner on review Oregon Forest Industries Counsel. With him on the petition was Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Richard P. Benner, Portland, argued the cause and filed the brief for respondent on review 1000 Friends of Oregon.

Neil S. Kagan, Portland, argued the cause for respondents on review Oregon Environmental Council, Sierra Club, Audubon Society of Portland, League of Women Voters of Oregon and National Wildlife Federation.

GILLETTE, J.

## GILLETTE, J.

The principal issue in this and the four companion land use cases, consolidated for argument before this court, concerns the relationship between the Forest Practices Act (FPA) and Statewide Land Use Planning Goal 5 (Goal 5).[1]

---

[1] Goal 5 states:

"To conserve open space and protect natural and scenic resources.

"Programs shall be provided that will (1) insure open space, (2) protect scenic and historic areas and natural resources for future generations, and (3) promote healthy and visually attractive environments in harmony with the natural landscape character. The locations, quality and quantity of the following resources shall be inventoried:

    a. Land needed or desirable for open space;
    b. Mineral and aggregate resources;
    c. Energy sources;
    d. Fish and wildlife areas and habitats;
    e. Ecologically and scientifically significant natural areas, including desert areas;
    f. Outstanding scenic views and sites;
    g. Water areas, wetlands, watersheds and groundwater resources;
    h. Wilderness areas;
    i. Historic areas, sites, structures and objects;
    j. Cultural areas;
    k. Potential and approved Oregon recreation trails;
    l. Potential and approved federal wild and scenic waterways and state scenic waterways.

"Where no conflicting uses for such resources have been identified, such resources shall be managed so as to preserve their original character. Where conflicting uses have been identified the economic, social, environmental and energy consequences of the conflicting uses shall be determined and programs developed to achieve the goal.

"* * * * *

"Natural Area — includes land and water that has substantially retained its natural character and land and water that, although altered in character, is important as habitats for plant, animal or marine life, for the study of its natural historical, scientific or paleontological features, or for the appreciation of its natural features.

"Open Space — consists of lands used for agricultural or forest uses, and any land area that would, if preserved and continued in its present use:

    (a) Conserve and enhance natural or scenic resources;
    (b) Protect air or streams or water supply;
    (c) Promote conservation of soils, wetlands, beaches or tidal marshes;
    (d) Conserve landscaped areas, such as public or private golf courses, that reduce air pollution and enhance the value of abutting or neighboring property;
    (e) Enhance the value to the public of abutting or neighboring parks, forests, wildlife preserves, nature reservations or sanctuaries or other open space;
    (f) Enhance recreation opportunities;
    (g) Preserve historic sites;

The counties involved in this appeal chose to resolve conflicts between the goal of forest land preservation in Goal 5 and the demands of commercial forest operations by relying on the FPA and its administrator, the Oregon Board of Forestry, to protect Goal 5 resources, rather than by developing independent programs in each county. The Land Conservation and Development Commission (LCDC) approved the counties' actions, finding that reference to and deference to the administration of the FPA was appropriate, because the FPA preempted county regulation of commercial forest operations. 1000 Friends of Oregon (1000 Friends) then petitioned for judicial review of LCDC's acknowledgment of Tillamook County's plan in the present case and, in separate petitions, challenged LCDC's limited acknowledgment of the comprehensive plans submitted by Union, Washington, Coos and Columbia counties. In each case, the Court of Appeals reversed and remanded for the county to do its own planning to achieve compliance with Goal 5. *1000 Friends of Oregon v. LCDC [Tillamook Co.]*, 76 Or App 33, 708 P2d 370 (1985), *on reconsideration*, 77 Or App 599, 714 P2d 279 (1986) (the present case); *1000 Friends of Oregon v. LCDC (Union County)*, 77 Or App 728, 714 P2d 283 (1986)(per curiam); *1000 Friends of Oregon v. LCDC (Columbia Co.)*, 77 Or App 728, 714 P2d 283 (1986)(per curiam); *1000 Friends of Oregon v. LCDC (Wash. Co.)*, 77 Or App 718, 714 P2d 279 (1986)(per curiam); *1000 Friends of Oregon v. LCDC (Coos Co.)*, 79 Or App 369, 719 P2d 65 (1986)(per curiam). LCDC then sought review of the Court of Appeals decisions. We granted review because of the widespread significance of the question. We reverse the Court of Appeals.

Goal 5 is designed to protect open spaces, scenic and historic areas and natural resources. The goal requires that

---

(h) Promote orderly urban development.

"Scenic Areas — are lands that are valued for their aesthetic appearance.

"Wilderness Areas — are areas where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain. It is an area of undeveloped land retaining its primeval character and influence, without permanent improvement or human habitation, which is protected and managed so as to preserve its natural conditions and which (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation; (3) may also contain ecological, geological, or other features of scientific, educational, scenic, or historic value."

local governments first inventory the location, quality and quantity of these resources (Goal 5 resources). Second, local governments must identify potential uses in each area containing Goal 5 resources that conflict with the preservation of the Goal 5 resources. The third step is to assess the economic, social, environmental and energy (ESEE) consequences of allowing or prohibiting the conflicting uses. Fourth, the local government must develop a program to protect its Goal 5 resources.

Under OAR 660-16-010, promulgated by LCDC, the local government has three choices after making the ESEE assessment. If it concludes that the resource should be protected fully, it may prohibit the conflicting use. OAR 660-16-010(1). If, on the other hand, it concludes that the conflicting use is more important than the Goal 5 resources in the area, the conflicting use may be allowed fully. OAR 660-16-010(2). Finally, if it concludes that both the resource and the conflicting use are sufficiently important so that neither should be sacrificed entirely, it may allow the conflicting use but limit it so that the resource is protected to some extent. OAR 660-16-010(3).

For its part, the FPA, ORS 527.610 to 527.730, was designed "to encourage forest practices that maintain and enhance [the benefits and resources to be derived from forested lands], and that recognize varying forest conditions." ORS 527.630(1). The FPA does not, however, ignore land use considerations. ORS 527.722(1) first provides:

"Except as provided in subsection (2) of this section, [which is not pertinent to the present case,] no unit of local government shall adopt any rules, regulations or ordinances regulating the conduct on forest lands of forest operations governed by the Oregon Forest Practices Act or rules promulgated thereunder."

ORS 527.726(1) then provides, however, that:

"Nothing in ORS 527.722 and 527.724 is intended to preclude counties from performing their planning duties pursuant to ORS 197.005 to 197.855 with respect to forested lands by:

"(a) Designating in comprehensive plans forested lands to be conserved in accordance with the state-wide planning goals;

"(b)  Zoning forested lands for uses other than or comple-mentary to commercial growing and harvesting of forest tree species in implementing a comprehensive plan; or

"(c)  *Adopting rules, regulations or ordinances regulating forest operations on those forested lands zoned for primary uses other than the commercial growing and harvesting of forest tree species in accordance with the use or purpose for which those lands have been zoned."* (Emphasis added.)

In the present case, Tillamook County performed the requisite inventory of Goal 5 resources, identified conflicting uses and assessed the ESEE consequences of allowing the conflicting uses. With respect to forested lands, the county designated commercial forest operations as conflicting with conservation of certain Goal 5 resources. Nonetheless, with the exception of one wetland site, the county zoned all its forest lands with a designation of commercial forest operations as a primary use, based on its ESEE assessment. In accordance with its interpretation of ORS 527.726(1)(c), the county relied on the Forest Practices Act and the rules to be promulgated thereunder by the State Board of Forestry to satisfy Goal 5 for those areas in which commercial forest operations were a primary use.

On January 4, 1985, LCDC acknowledged Tillamook County's comprehensive plan. LCDC found that the FPA pre-empted the county's authority to regulate commercial forest operations except where it was appropriate, in light of the importance of the Goal 5 resources in the area, to designate such commercial forest operations as an "incidental or insignificant" use. LCDC found that:

"The legislative history of ORS 527.722-527.726 (HB 3008) does not provide clear direction regarding the Legislature's intended meaning of 527.726(1)(c). Lacking a clear definition or expression of intended meaning, the Commission has determined that with possible exceptions not relevant in Tillamook County, if commercial growing and harvesting of forest tree species is more than an incidental or insignificant use of the property under the zoning designation applied, it is a 'primary use.' *If commercial growing and harvesting of forest tree species is one of several primary uses, the county may not regulate forest practices. Under ORS 527.726.(1)(a) a county may adopt a zoning district which precludes commercial forestry. However, beyond that option the county is preempted from regulating forest operations unless forestry is an*

*incidental or insignificant (nonprimary) use under the zoning designation adopted."* (Emphasis added.)

LCDC relied on this analysis in approving similar provisions in the comprehensive plans submitted by Union, Washington, Columbia and Coos counties (the companion cases).

The Court of Appeals reversed LCDC's order acknowledging Tillamook County's comprehensive plan and remanded for compliance with Goal 5. The court explained:

"'* * * [W]e do not share LCDC's understanding that the authorization in ORS 527.726(1)(c) for counties to zone lands 'for primary uses other than the commercial growing and harvesting of forest tree species' does not obtain 'if commercial growing and harvesting * * * is more than an incidental or insignificant use of the property under the zoning designation applied.' * * * In short, the quintessence of ORS 527.726(1)(c) is the authority it gives counties to determine whether forest operations or some other use is primary in a zone. LCDC's interpretation effectively divests counties of that statutory authority." *1000 Friends of Oregon v. LCDC [Tillamook Co.], supra,* 76 Or App at 39.

On reconsideration, the Court of Appeals amplified and adhered to its former opinion, concluding as follows:

"We continue to disagree with LCDC's view that ORS 527.726(1)(c) cannot or must not be applied as it is written, and we adhere to the interpretation that the statute creates an exception to ORS 527.722(1) and preserves the authority of counties to apply Goal 5 by deciding whether a commercial forestry use or a conflicting Goal 5 resource use is primary. LCDC's contrary understanding is not borne out by the language of ORS 527.726(1)(c) or the statute's other subsections. Subsection (1)(a) allows counties, without reservation, to designate 'forested lands to be conserved in accordance with the state-wide planning goals'; subsection (1)(b) authorizes them, also without limitation, to zone 'forested lands for uses other than [commercial forestry].' In short, there is nothing in ORS 527.726(1) that limits county regulatory authority to forested lands on which commercial forestry is merely insignificant or incidental, as distinct from forested lands on which counties decide that a use other than commercial forestry should be protected or preferred." 77 Or App at 604-05.

We think the foregoing contrasting views reflect not only a disagreement over an answer but, more importantly, a failure to agree on the question. LCDC recognized that, under

ORS 527.726(1)(a), a county has the absolute right to zone forested lands in a manner that would exclude commercial timber operations. It concludes, however, that, once commercial timber operations are permitted in a more than incidental way by the county's choice of zoning designations, the county cannot reserve to itself continuing control over other kinds of activities on the same parcel because the FPA reserves to the Department of Forestry plenary control over the management of such parcels.

The Court of Appeals, for its part, chose in its original opinion to attack what it styled as LCDC's conclusion that a county cannot, in addition to zoning a parcel for commercial timber operations, also zone the same parcel for other "primary" uses. *1000 Friends of Oregon v. LCDC [Tillamook Co.]*, *supra*, 76 Or App at 39. We do not read LCDC's conclusion quite that way. LCDC does not foreclose zoning for multiple primary uses; it merely concludes that, *where one of the primary uses is commercial timber operations,* that zoning decision by the county turns over further protection of Goal 5 resources on the parcel to the Department of Forestry.

The Court of Appeals' amplification of its initial opinion did not clear up this misunderstanding. When the court said, "* * * [w]e adhere to the interpretation that [ORS 527.726(1)(c)] creates an exception to ORS 527.722(1) *and preserves the authority of counties to apply Goal 5 by deciding whether a commercial forestry use or a conflicting Goal 5 resource use is primary,*" *1000 Friends of Oregon v. LCDC [Tillamook Co.]*, *supra*, 77 Or App at 604-05 (emphasis supplied), it was speaking to a non-issue. No one denies that the counties have the authority to which the Court of Appeals refers; the struggle is over what authority (if any) *remains* to a county *after* it has exercised that authority in a particular way, *viz.,* by zoning a parcel for commercial forest use.

In its petition for review, LCDC, without precisely pinpointing this conceptual slippage between its views and those of the Court of Appeals, sets forth the following description of the procedure that it understands a local government is to follow when planning for an area that includes forested lands governed by the FPA:

"* * * In order to determine whether commercial forestry is a 'primary use' a county must:

"*Step 1:* Prepare an inventory of Goal 5 resources (OAR 660-16-000);

"*Step 2:* Identify those commercial forest operations which may conflict with these Goal 5 resources (OAR 660-16-005);

"*Step 3:* Perform an analysis of the ESEE consequences of allowing the forest operations (OAR 660-16-005(2)); and

"*Step 4:* Adopt a program based upon the ESEE analysis (OAR 66-16-010):

"a. If the ESEE analysis shows that the Goal 5 resource site is of such importance relative to commercial forestry that forest operations must be prohibited or forestry be relegated to an insignificant use or use incidental to the Goal 5 resources use, then zoning regulations may be adopted that affect forest operations.

"b. If the ESEE analysis shows that both commercial forestry and Goal 5 resource values are important, but that the relative value of the Goal 5 resource does not warrant imposition of the strict limitations that would render commercial forestry an incidental or insignificant (nonprimary) use, then no regulation of forest practices may occur through zoning. ORS 527.726(1)(c)."

We allowed review in order to examine more closely the interrelationship between the FPA and Goal 5 in light of the competing views of LCDC and the Court of Appeals concerning the legislative policy behind the FPA.

After this case was argued, two additional issues arose that have an effect on our analysis. One concerned whether the issue (or issues) already identified were, in fact, squarely presented. The other concerned the use of the terms, "incidental" and "insignificant," in the analysis urged by LCDC.

As to the first matter, our review of the record in these five cases establishes that all the counties *chose* to rely on the FPA. It thus fairly could be argued that the only issue before us is a very narrow one: whatever the extent of its authority may be, is it *legally permissible* for the county to fulfill its planning responsibilities by deference to the administration of the FPA? Such a question is easier to answer than the one of preemption advanced by LCDC: The FPA itself is supposed to be administered in conformance with, *inter alia,*

Goal 5. ORS 197.005(2); 197.010(1); 197.015(9), (10); 197.040(2)(e); 197.180; 197.250; 526.016. Nothing in the text or context of ORS 527.722 or 527.726 suggests to us that a county is *foreclosed* from the option of reliance on the FPA in meeting the county's Goal 5 obligations. The county was entitled to do so. The order of LCDC to that effect was correct.

Unfortunately, we cannot limit our holding to the narrow ground just identified because, while it is clear that Tillamook's choice of the FPA was voluntary, it appears that at least one of the other counties (Washington) believed it had no choice in selecting the FPA, and we cannot be sure what the other three counties believed concerning the other choices open to them. Were we to decide this case narrowly, we would simply leave open the possibility that some party might now wish to have LCDC remand the plans to some counties to determine if the counties might now wish to "go it alone," rather than rely on the FPA. If LCDC is right about preemption, such further activities would be pointless delay. It is appropriate to address the preemption question now.

Concerning the second matter, we submitted additional questions to the parties after oral argument. These questions focused on LCDC's use of the terms "incidental" and "insignificant" to define nonprimary commercial forest operations subject to county regulation under the LCDC interpretation of ORS 527.726(1)(c). We asked the parties whether any statutory text, legislative history, or decisional or other precedent supported LCDC's use of those terms. In addition, we asked whether a possible middle ground exists between LCDC's definition of a nonprimary use and that of the Court of Appeals, *i.e.*, whether there could be multiple "primary" uses of a single parcel.

The parties have been unable to produce any textual support for the use of the terms "incidental" and "insignificant" to describe nonprimary uses, nor has this court discovered any such support. LCDC argues, however, that it did not intend to suggest that *all* uses should be classified as either "primary" or "incidental or insignificant." Rather, it argues, the distinction arises from practical considerations that are unique to commercial forest operations:

> "Commercial forestry is unlike many other uses. The commercial timber harvests that generate the income needed to

pay costs and pay a return to owners are spaced over a period of decades. During the decades-long growing cycle, the timber owner is required to make substantial expenditures and conduct management operations that are extensively regulated by the state. As LCDC and the Department of Forestry have indicated, it is simply unrealistic to accept the notion that commercial forestry can occur in a way that is not a 'primary' use of the land. If commercial forestry is allowed, typically, it will be a 'primary' use."

This argument assumes too many facts to permit us to adopt it as stated. If it is correct in substance, it is so because of what the pertinent provisions of the FPA mean — an inquiry that returns us to the central issue in this case. We are left to seek elsewhere the intent of the legislature in enacting the pertinent provisions of the FPA.

■ In construing statutes, a court should harmonize different sections of a single act whenever possible. *Davis v. Wasco IED,* 286 Or 261, 272, 593 P2d 1152 (1979). The Court of Appeals found that ORS 527.722 and 527.726(1) were "internally ambivalent," and, therefore, impossible to harmonize. 77 Or App at 605. Although the court recognized that "a literal reading of ORS 527.726(1) detracts from the objective of uniform regulation at which ORS 527.722 was clearly aimed," it argued that such a reading "is not optional." *Id.* Despite the preemptive language contained in ORS 527.722, therefore, the Court of Appeals concluded that ORS 527.726(1)(c) authorizes a county to regulate commercial forest operations whenever such regulation is, in the view of that county, necessary to protect a Goal 5 resource.

We disagree. The statutes involved in this case follow a logical preemption pattern. ORS 527.722 prohibits counties from adopting any rules or regulations regulating commercial forest operations governed by the FPA. The only exceptions to this rule arises when an area is zoned for a primary use other than commercial forest operations. ORS 527.726(1)(c). The Court of Appeals' interpretation allows the exception to swallow the rule. We do not believe that this was the legislature's intent in enacting ORS 527.726(1)(c).

As the Court of Appeals acknowledged, uniformity of regulation was one of the legislature's main goals in enacting the FPA. ORS 527.630. The standard applied by the Court of

Appeals allows county planning authority to supplant this overriding legislative purpose. We believe that the Court of Appeals gave insufficient consideration to the legislature's intent to achieve uniform regulation of commercial forest operations.

In enacting ORS 527.726, the legislature considered and rejected alternative language that would have given counties greater control over forest operations. While ORS 527.726, then HB 3008, was before the Senate Committee on Agriculture and Natural Resources, Senators Brown and Kulongoski drafted a minority report adding the following language:

"(4)   Upon approval by the Land Conservation and Development Commission, under ORS 197.180, of the State Forestry Department's coordination program affecting operations on forest lands, no city or county shall adopt any rules, regulations or ordinances regulating the conduct of operations on forest lands governed by the Oregon Forest Practices Act, or rules promulgated thereunder, *unless the rules, regulations or ordinances adopted by the city or county:*

"(a)   Are in accordance with the policy stated in this section and provide more protection for the natural resource base of the affected forest lands than do the rules adopted pursuant to the Oregon Forest Practices Act;

"(b)   Are in accordance with state-wide planning goals promulgated under ORS 197.225; and

"(c)   Are contained in a comprehensive plan acknowledged under ORS 197.250." (Emphasis added.)

On June 16, 1979, Senator Kulongoski's motion to incorporate the minority report failed. Minutes, Senate Committee on Agriculture and Natural Resources (June 16, 1979).

On June 20, 1979, John Platt of the Oregon Environmental Council proposed an amendment that would allow counties to regulate areas in which commercial forestry was one of several primary uses. He testified that, as worded, the bill would make land zoned for multiple primary uses exclusively subject to the FPA. He proposed an amendment to change this result by adding the words, "or in addition to," so that the language of ORS 527.726(1)(c) would have reserved to counties the right to regulate forest operations on forested lands zoned for primary uses "other than or in addition to"

commercial forest operations. The motion to incorporate the amendment failed. Minutes, Senate Committee on Agriculture and Natural Resources 3 (June 20, 1979).

■ Admittedly, legislative refusal to enact particular amendatory language is, at best, an inconclusive source of legislative intent. Nonetheless, the refusal to adopt these amendments justifies LCDC's interpretation of the preemptive effect of the FPA, especially in light of the otherwise clear legislative intent to achieve uniform regulation of commercial forest operations throughout the state. The Court of Appeals' conclusion to the contrary was error. LCDC's carefully structured view of county authority under ORS 527.726(1)(c), as stated in its original opinion and as more fully explicated in its petition to this court, is correct.

1000 Friends argues in the alternative that LCDC erred in acknowledging that portion of the counties' comprehensive plans which relied on the FPA because LCDC has not yet certified that the FPA and the regulations promulgated thereunder comply with Goal 5. *See* ORS 197.180. We see no reason further to delay acknowledgment of the counties' plans, in effect holding them hostage pending resolution of a matter over which they have no control and which is essentially a dispute between 1000 Friends, LCDC and the Department of Forestry.

The decision of the Court of Appeals is reversed; the order of the Land Conservation and Development Commission is affirmed.