[No. 55086–7.    En Banc.    March 16, 1989.]

RICHARD C. JOHNSON, *Respondent*, v. THE DEPARTMENT
OF EMPLOYMENT SECURITY, *Appellant*.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Sells, Assistant,* for appellant.

*Robert C. Milhem,* for respondent.

UTTER, J.—The Department of Employment Security (Department) appeals a decision of the Spokane County Superior Court reversing an administrative ruling which reduced Mr. Johnson's unemployment compensation. We conclude that the Department's interpretation of the unemployment compensation statute is an error of law and affirm the Superior Court's decision.

The material facts are not in dispute. Richard Johnson is a 48–year–old former employee of Kaiser Aluminum, where he worked for 28 years. On July 31, 1985, Kaiser terminated Mr. Johnson's employment as part of an overall force reduction. Rather than be laid off, Mr. Johnson accepted early retirement. Mr. Johnson sought gainful employment elsewhere but remained unemployed during the period he received unemployment compensation.

During his employment with Kaiser, Mr. Johnson participated in the company's retirement program. Concerned that the financial uncertainty of the company could jeopardize the safety of his pension, he removed his retirement benefits upon termination. He received a lump sum settlement of approximately $158,000, of which he invested $65,000 in an Individual Retirement Account (IRA) pursuant to the rollover provisions of the Internal Revenue Code. The IRA funds cannot be withdrawn without penalty for 11 years.

On September 4, 1985, the Department issued a "Determination Notice and Overpayment Assessment" asserting that the entire proceeds from Mr. Johnson's private pension plan reduced his weekly unemployment compensation benefit by $106. The Department sought to recover $106 for each week that Mr. Johnson had received unemployment compensation prior to the notice.

Mr. Johnson maintained that the reinvestment of $65,000 into an IRA should prevent the Department from considering those funds to determine the pension deduction. He appealed first to the Office of Administrative Hearings and then to the Commissioner of the Department of Employment Security, both resulting in affirmations of the Department's decision. Mr. Johnson then appealed the Commissioner's decision to the Spokane County Superior Court as provided by RCW 34.04.130 of the administrative procedure act. After full argument, the Superior Court reversed the Commissioner's decision. The Department appealed this decision to the Court of Appeals (Division Three), which certified the issue to this court.

I

The court is reviewing a final administrative decision of the Commissioner of the Department of Employment Security. RCW 50.32.120 provides that judicial review of such decisions shall be governed by the procedural requirements of RCW 34.04.130 of the administrative procedure act. *Schuffenhauer v. Department of Empl. Sec.*, 86 Wn.2d 233, 543 P.2d 343 (1975). In particular, the act establishes the following guidelines for review of administrative actions:

(5) The review shall be conducted by the court without a jury and shall be confined to the record . . . The court shall, upon request, hear oral argument and receive written briefs.

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

RCW 34.04.130(5), (6).

The Department suggests that the issue before the court rests upon "factual determinations". It contends that this court's review of such factual determinations is under the "clearly erroneous" or "arbitrary and capricious" standards, either of which would give the agency's interpretation of the law some deference. The primary conflict in this case, however, concerns a question of law as applied to the facts: whether, according to the facts presented, pension benefits withdrawn from a former place of employment and placed into an IRA constitute a lump sum "payment" within the meaning of the unemployment compensation statute (RCW 50.04.323). Factual interpretation is relevant here because the definition of "payment" in this case in part turns on the intent of the recipient. Based on the facts of this case, we infer intent as a matter of law.

■ As we stated in *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 329–30, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983), "[m]ixed questions of law and fact, or law application issues, involve the process of comparing, or bringing together, the correct law and the correct facts, with a view to determining the legal consequences." Such questions exist where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term. *Daily Herald Co. v. Department of Empl. Sec.,* 91 Wn.2d 559, 561, 588 P.2d 1157 (1979). Because the resolution of mixed law and fact issues does not require "reweighing evidence of credibility and demeanor", this court reviews them under a de novo standard. *Sellers,* 97 Wn.2d at 330; *Department of Rev. v. Boeing Co.,* 85 Wn.2d 663, 538 P.2d 505 (1975).

## II

The question before the court is one of first impression. The pertinent portions of the unemployment compensation statute, RCW 50.04.323, provide:

(1) The amount of benefits payable to an individual for any week . . . [during] which such individual is receiving a governmental or other pension, retirement or retired pay . . . shall be reduced (but not below zero) by an amount equal to the amount of such pension, retirement or retired pay, annuity, or other payment, which is reasonably attributable to such week . . .

. . .

(3) A lump sum payment accumulated in a plan described in this section paid to an individual eligible for such payment shall be prorated over the life expectancy of the individual computed in accordance with the commissioner's regulation.

Both parties agree that the resolution of this case turns on the meaning of the term "paid" as used in RCW 50.04-.323(3).

The Department argues that the entire $158,000 lump sum settlement Mr. Johnson received from Kaiser upon termination of employment constituted a payment under this statute; therefore, according to the Department, the prorated amount of these retirement funds should be considered in calculating Johnson's unemployment compensation. The fact that Mr. Johnson deposited those funds into an IRA does not affect the fact that Kaiser had "paid" him the retirement pay. As the Commissioner stated in his decision:

The operative word in this section [RCW 50.04.323(3)] is "paid". Here, the claimant received a lump sum pension payment over which he had total dominion and control. The claimant was free to then do with it as he pleased. Under the . . . statute it is of concern to us only that the claimant had indeed been paid, and not that he then chose to exercise his right to invest in an IRA of his choice.

Commissioner's Record, at 51. The Department argues that the Commissioner's decision best reflects the plain meaning and application of the statutory terms.

Mr. Johnson does not argue that the entire $158,000 settlement should be shielded from unemployment compensation liability, only the $65,000 that was reinvested in an IRA. He argues that withdrawing those funds from his Kaiser pension fund and placing them in an IRA is tantamount to a simple transfer of pension benefits from one plan to another. Thus, the funds do not constitute payment of a lump sum subject to the pension offset provisions of RCW 50.04.323. Johnson argues that this result best fulfills the intent of the statute and the public policy considerations of the Employment Security Act.

The terms "payment" and "paid", as used in RCW 50.04.323(3) to describe the pension offset for calculating unemployment benefits, are not defined in the statute. Nor does the legislative history provide much guidance. *See* Laws of 1980, ch. 74, § 1. We therefore resort to principles of statutory construction to resolve the issue.

■■ When the Legislature uses words of common meaning, that meaning will be applied to the statutory language unless it leads to absurd or incongruous results. *In re Lehman*, 93 Wn.2d 25, 27, 605 P.2d 948 (1980). Where the statutory language is plain, the statute is not open to construction or interpretation. *Crown Cascade, Inc. v. O'Neal*, 100 Wn.2d 256, 668 P.2d 585 (1983). Thus, the Department argues that Kaiser "paid" the retirement benefits to Mr. Johnson and, in accordance with the statute, these benefits must be taken into account to determine Johnson's unemployment compensation. *The American Heritage Dictionary* 963 (New College ed. 1980) contains the following definition of "pay": "money given in return for work done; salary; wages; hire." Here, Kaiser gave the retirement money to Johnson in return for work done, and so it would appear that Mr. Johnson had been "paid".

Mr. Johnson argues, however, that such a strict interpretation of the word "paid" would lead to an absurd and unjust result and undermine the public policy supporting the statute. The Legislature's statement of the public policy underlying the Employment Security Act is found in RCW 50.01.010: the compulsory setting aside of unemployment reserves is necessary to alleviate the many adverse effects of involuntary unemployment. *Schuffenhauer v. Department of Empl. Sec.*, 86 Wn.2d 233, 235–36, 543 P.2d 343 (1975). The preamble to the statute further states, and this court has held, that the act is to be liberally construed in order to accomplish this objective. RCW 50.01.010. *See Schuffenhauer*, at 236; *Amburn v. Daly*, 81 Wn.2d 241, 248, 501 P.2d 178 (1972).

Mr. Johnson presents a compelling argument that the Commissioner's ruling would confront him and other unemployed workers in similar situations with a "Hobson's choice": either leave his retirement money at risk in a financially ailing company, or transfer the funds from the company pension account to an IRA but lose his unemployment compensation in the process. Mr. Johnson states that it was Kaiser's uncertain financial stability that prompted him to withdraw the funds in the first place and he should not be penalized for protecting his retirement income.

A similar dilemma confronted the unemployed worker in *Kenna v. Department of Empl. Sec.*, 14 Wn. App. 898, 545 P.2d 1248 (1976), where the Commissioner ruled that an individual seeking self–employment could be considered self–employed and thus ineligible for unemployment compensation. In an opinion by Judge Andersen, the Court of Appeals reversed.

> Considering all of the other problems besetting unemployed workers, they should not be required on the one hand to actively seek work, as they must, while at the same time running the risk of being declared ineligible for benefits whenever it appears to the Department as

though their efforts in that regard might be successful
. . .
*Kenna,* at 905. An individual's eligibility for unemployment benefits must be determined in light of the specific facts of each case and of the legislative mandate that the provisions of the Employment Security Act be liberally construed. *Bartel v. Employment Sec. Dep't,* 60 Wn.2d 709, 719, 375 P.2d 154 (1962).

Considering the specific facts of this case—that Mr. Johnson was involuntarily terminated, that he was concerned with the viability of his pension if he left these funds with an ailing company, that he had no practical access to the IRA money for over 11 years—we infer from the factual record that Mr. Johnson had no intention of using the $65,000 pension funds for current living needs. We infer this intent as a matter of law. Mr. Johnson merely transferred his retirement money from one tax–deferred account to another. While the Commissioner is correct that Mr. Johnson had complete control of the funds for 2 days and could have done anything he wanted with them, the fact is that he immediately placed the funds in an IRA subject to substantial penalty for early withdrawal. The record does not show that at any time he intended or contemplated any other use of the funds. When an individual withdraws such benefits from one pension fund and transfers them to another, he should have a reasonable time to reinvest the money in another retirement program without incurring unemployment compensation liability.

We note in passing that the "rollover" provision in the Federal Tax Code of 1986 does not treat as a taxable event the transfer of employee trust money into an "eligible retirement plan" if such transfer is made within 60 days. *See* 26 U.S.C. § 402(a)(5) (1982 & Supp. IV 1986). Although our holding is closely tied to the particular facts of this case, we find the duration of 60 days to be an example of a reasonable amount of time in which to reinvest retirement funds.

180

Because Mr. Johnson merely transferred $65,000 of his pension money from one account to another and does not now have it available for his immediate use without incurring substantial penalty, we conclude that he has not received "payment" of these funds within the meaning of RCW 50.04.323(3).

## III

We reverse the decision of the Commissioner as an error of law and remand the case to the Department for a new determination of unemployment benefits in accordance with this opinion. We also grant Mr. Johnson's request for attorney fees and costs, as provided in RCW 50.32.160.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.