Argued and submitted May 7, 1991, the decision of the Court of Appeals and the
order of the Employment Appeals Board reversed and case remanded to the
Employment Appeals Board January 3, 1992

Marcia McKEAN-COFFMAN,
*Petitioner on Review,*

*v.*

EMPLOYMENT DIVISION,
*Respondent on Review.*

(EAB 89-AB-1298; CA A62926; SC S37747)

824 P2d 410

Barry L. Adamson, Lake Oswego, argued the cause for petitioner on review. With him on the petition were Roger Hennagin and Hennagin & Shonkwiler, Lake Oswego.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This case involves a question of statutory construction. Marcia McKean-Coffman (claimant) seeks review of a Court of Appeals' decision affirming an Employment Appeals Board (EAB) holding that she is disqualified from receiving unemployment benefits because she received her vested retirement funds in a lump sum payment when her employment was terminated. *McKean-Coffman v. Employment Div.*, 104 Or App 345, 801 P2d 858 (1990). The issue is whether, within the meaning of ORS 657.205(1), an unemployment compensation claimant to whom retirement funds have been paid in a lump sum "received" a retirement "payment" where she timely rolled the funds over into an Individual Retirement Account (IRA). We conclude that such a claimant is not disqualified. We reverse the Court of Appeals' decision and remand this case to EAB for a new determination of unemployment benefits.

Claimant worked as a secretary for a financial institution (employer) from 1984 to 1989. In June 1989, she was discharged by employer because her job description was changed and she was unable to become trained in her new position. Employer told claimant that her vested retirement funds of $8,334 would be paid to her and that she had the option of receiving the funds in a lump-sum or in periodic payments.[1] Because of the adverse tax consequences to claimant if she had elected to receive periodic payments, claimant elected to receive her retirement funds in a lump sum, which she then rolled over into an IRA within the time allowed by federal tax law.[2] Claimant thereafter submitted a claim for unemployment benefits. ORS 657.150 *et seq.*[3]

---

[1] The Court of Appeals' opinion states, incorrectly, that claimant had the option of leaving her retirement funds with her employer. *McKean-Coffman v. Employment Div.*, 104 Or App 345, 348, 801 P2d 858 (1990). The referee specifically found that "[c]laimant's only options upon her work separation were to either receive a lump-sum payment or take monthly payments." EAB adopted that finding, and the Division conceded the point on review.

[2] In the context of this case, a "rollover" is a tax-free transfer of funds from a qualified retirement plan to a person, then from that person to an individual retirement account (IRA). 26 USC § 408(d)(3)(A)(i) (1988). To avoid being taxed as current income, the transfer to the IRA must be made not later than the 60th day after the day on which the person acquired the payment or distribution from the former plan. 26 USC § 402(a)(5)(C) (1988).

[3] The record does not disclose claimant's age. The Division does not argue, however, that she is of retirement age. Based on our examination of the record, we

The Employment Division (Division) denied claimant unemployment benefits on the ground that she had received a lump sum payment of retirement funds when her employment terminated, which she could have received in the form of periodic payments, and that if she had elected to receive the funds in periodic payments they would have exceeded the weekly benefit amount to which she otherwise would have been entitled. In other words, the mere availability of that option permitted the Division to treat claimant as though she had elected to receive the distribution in the form of periodic payments. The Division relied on ORS 657.205[4] and OAR 471-30-020.[5]

Claimant requested a hearing. She argued that she had not "received" her retirement funds within the meaning of ORS 657.205 and OAR 471-30-020, but merely had rolled them over into another qualified retirement program. She asserted that the Division should not have considered her retirement funds in determining her eligibility for unemployment benefits. The referee set aside the Division's denial, explaining:

---

believe that it is fair to assume that, although unemployed, claimant continues to be in the workforce.

[4] ORS 657.205 provides in part:

"(1) Subject to the provisions of subsections (2), (3), and (4) of this section, an individual is disqualified for benefits for any week with respect to which the individual is receiving, will receive, or has received a governmental or other pension, retirement or retired pay, annuity, or other similar periodic payment based on the previous work of the individual, if payment is received under a plan maintained or contributed to by a base year employer of the individual.

"(2) In determining disqualification for any week under subsection (1) of this section, if the remuneration and payments referred to in subsection (1) of this section cover a period greater than and include such week, a pro rata share of such remuneration and payments shall be apportioned to such week or weeks. Such payments made in a lump sum upon separation or in weekly or other installments shall be considered as payments with respect to weeks following separation without regard to the existence or lack thereof of an employee-employer relationship during the week such pay is allocated pursuant to the assistant director's rules."

[5] OAR 471-30-020(3) provides in part:

"An individual who elects to receive retirement benefits in a lump sum payment when the option exists to receive periodic payments during the individual's benefit year shall be considered eligible for periodic payments under ORS 657.205(1). Such lump sum payment shall be apportioned as provided in ORS 657.205(2)."

"Neither [ORS 657.205 nor OAR 471-30-020] apply in this case. Claimant did not retire from employer, she was discharged. She did not receive a pension or lump-sum settlement, merely rolled over her potential retirement fund into another retirement fund. This action shall not constitute a receipt of a lump-sum payment pursuant to a retirement. It would be an abuse of the referee's descretion [sic] to apply the above rule and statute to deny claimant benefits under the facts of this case."

On the Division's application for review, EAB adopted the referee's findings. EAB agreed, however, with the Division's interpretation of the statute:

"Under ORS 657.205, retirement pay is disqualifying if payment is received under a plan maintained or contributed to by a base year employer of the individual. In the case at hand, [employer] was the base year employer. That employer did contribute to a plan under which the payment in issue was received by the claimant. The statute disqualfies [sic] the claimant.

"* * * The claimant received retirement pay. Whatever the claimant chose to do with that lump sum payment would not avoid the disqualification."

Accordingly, EAB set aside the referee's decision.

The Court of Appeals affirmed. It stated:

"For purposes of ORS 657.205, it is irrelevant what a claimant actually does with the funds after receipt. She could have elected to keep the funds in the original retirement plan, in which case she would not have 'received' them. However, she elected to withdraw the funds, and held them for two weeks before rolling them over into the IRA. She did receive them. Whatever claimant chose to do with the funds after having actually received them is not relevant." *McKean-Coffman v. Employment Div., supra,* 104 Or App at 348-49 (footnote omitted).

We review to determine whether EAB has erroneously interpreted a provision of law.[6]

---

[6] ORS 657.282 provides in part:

"Judicial review of decisions under ORS 657.275 shall be as provided for review of orders in contested cases in ORS 183.310 to 183.550 * * *."

ORS 183.482(8)(a) provides:

"The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

The question before this court is one of first impression. The question is whether, within the meaning of ORS 657.205, claimant has "received a governmental or other pension, retirement or retired pay, annuity, or other similar periodic payment" which would reduce or eliminate the unemployment benefits that she otherwise would be entitled to receive.

Claimant argues that the disbursal of her retirement funds by employer followed by her timely rollover of the funds into an IRA is tantamount to a simple transfer of funds from one qualified retirement plan to another. Thus, she asserts she did not "receive" those funds within the meaning of ORS 657.205, because she does not now have the funds available to her for her immediate use without incurring a substantial early withdrawal penalty. She argues further that the Division's interpretation would produce an absurd result that is contrary to state and federal tax policy. Finally, claimant argues that EAB erred in its construction of ORS 657.205 by applying the statute to retirement benefits that are not received in "periodic payments," and by applying the statute to persons who are not retired.

The Division argues that the word "received" in the statute is a word of common usage and must be given its common meaning. Regardless of what claimant did with her funds later, she "received" them from her employer. Relying on the plain words of ORS 657.205, the Division argues further that it is bound by the legislature's use of the words "is receiving, has received, or will receive." The Division reasons that it must disqualify claimant because she "received" her retirement funds before she rolled them over into her IRA.

The Division argues that its interpretation of ORS 657.205, as covering lump sum payments in cases where periodic payments also are available, is consistent with the rule of statutory construction requiring that subsections of a statute be read consistently with one another. *See 1000*

---

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law."

*Friends of Oregon v. LCDC (Tillamook Co.)*, 303 Or 430, 441, 737 P2d 607 (1987) ("In construing statutes, a court should harmonize different sections of a single act whenever possible").

■■ ORS 657.205 does not expressly answer how retirement funds that are timely rolled over into an IRA should be treated in this context. OAR 471-30-020(3) likewise does not expressly answer that question. Therefore, we resort to general principles of statutory construction to resolve the question.

ORS 174.010 provides:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

ORS 174.020 provides in part:

> "In the construction of a statute the intention of the legislature is to be pursued if possible * * *."

*See Blyth & Co. Inc. v. City of Portland*, 204 Or 153, 159, 282 P2d 363 (1955) (courts must endeavor to ascertain and give effect to the legislature's purpose). In construing a statute, courts must refuse to give literal application to language when to do so would produce an absurd or unreasonable result. Rather, courts must construe the statute if possible so that it is reasonable and workable and consistent with the legislature's general policy. *Pacific P. & L. Co. v. Tax Com.*, 249 Or 103, 110, 437 P2d 473 (1968). The inquiry into legislative intent begins with an examination of the language of the statute itself. When the language itself provides sufficient insight into legislative intent, it is not appropriate for a court to consult legislative history. In this case, we find the language of ORS 657.205 is ambiguous and, therefore, we look to the legislative history of the statute.

■ The sparse legislative history of the 1979 amendments to ORS 657.205(1), Or Laws 1979, ch 185, § 1, suggests that the 1979 legislature changed ORS 657.205(1) in

response to proposed changes in the Federal Unemployment Tax Act (FUTA), codified at 26 USC § 3304 (a)(15) (1988). *See, e.g.*, Minutes, Senate Committee on Labor, Consumer and Business Affairs, January 23, 1979 and Exh D (testimony of Libby Leonard of the Oregon Employment Division).[7] FUTA outlines requirements that states must meet in order to claim FUTA's tax credit benefits.[8] ORS 657.205(1) contains language virtually identical to the relevant federal law. *Compare* ORS 657.205 *with* 26 USC § 3304-3306 (a)(15)(1988). From this, claimant posits that the disqualification language was added to ORS 657.205(1) by the 1979 legislature solely to deny unemployment benefits to persons who either are retired or who are eligible for retirement from the workforce.

Because Oregon adopted the federal language virtually verbatim, federal legislative history pertaining to the federal language is persuasive in interpreting the purpose of ORS 657.205. *See Computer Concepts, Inc. v. Brandt*, 310 Or 706, 714, n 7, 801 P2d 800 (1990) (federal legislative history and federal cases construing federal act are persuasive when interpreting similar Oregon statute); *Karsun v. Kelley*, 258 Or 155, 161, 482 P2d 533 (1971) (legislative history from federal statute is helpful when Oregon has substantially similar language in its statute). The federal legislative history shows the statutory language was directed toward persons who were collecting retirement benefits *and* unemployment benefits simultaneously, *i.e.*, persons who were "double dipping." Senate Finance Committee, S Rep No. 94-1265, 94th Cong 2d Sess 21-22 (1976), *reprinted in* 1976 US Code Cong & Admin News 5997, 6015-16; *see Wyoming Dept. of Employment v. Secrest*, 811 P2d 733, 735 (Wyo 1991), (*quoting Tucker v. Department of Employment Security*, 122 NH 958, 453 A2d 1247 (1982)) (" 'The purpose of the federal and complementary state statutes is to prevent so-called "double dipping" by persons who are retired.' "); *Edwards v. Valdez*, 602 F Supp 361 (D. Colo. 1985) (same).

---

[7] ORS 657.205(1) previously did not contain any reference to periodic payment; rather, it referred to "any payment under a retirement plan." ORS 657.205 (1977).

[8] For a discussion of the interrelationship between state and federal law in this area, see *Salem College & Academy, Inc. v. Emp. Div.*, 298 Or 471, 476-77, 695 P2d 25 (1985).

Moreover, it is unlikely that Congress enacted the statutory language, which Oregon later adopted, with the intention of undermining the federal tax policy relating to retirement savings that is embodied in the federal laws relating to the taxation of retirement plans such as IRAs. We believe that the deferral of federal income taxes on current income and the imposition of a substantial penalty for premature withdrawal of IRA contributions indicates a strong federal policy to encourage the accumulation of retirement funds for use after retirement. 26 USC § 402 (1988). ORS 657.205 was not intended to force an unemployed worker who remains in the workforce to use retirement funds involuntarily for current living expenses. That result also is consistent with the fact that an unemployed worker's savings and other financial resources are not offset against unemployment benefits. ORS 657.005 to 657.990. The general purpose underlying ORS 657.205 is to prevent an unemployed worker from collecting retirement benefits and unemployment benefits simultaneously. It is not to force the premature depletion of retirement funds for current living expenses when a person is not of retirement age and, in fact, is saving for future retirement under a plan that both state and federal taxing authorities recognize as a tax-advantaged retirement plan.[9]

■    Claimant here is not a "double-dipper." She was discharged by her employer at a time when she was neither of retirement age nor intending to retire. She did not have the option of leaving her retirement funds with her employer — she only could take them in a lump-sum payment or in periodic payments. She did not intend to use her retirement funds for current living expenses. She then timely rolled over the funds into an IRA. She did not benefit from retirement funds and unemployment benefits simultaneously. As far as the record shows, although unemployed, she continued in the workforce.

The Division focuses exclusively on the verb "receive." That focus is incomplete. Although the Division is correct that claimant "received" possession of the funds in some sense, the use of that verb does not reveal the full intent

---

[9] *Cf. U. of O. Co-Oper. v. Dept. of Rev.*, 273 Or 539, 544-45, 542 P2d 900 (1975) (the legislature intends economic transactions to have similar tax consequences under both federal and state law).

of the statute. The question here is *what* did claimant receive? Did she receive "a governmental or other pension, retirement or retired pay, annuity or other similar periodic payment"? ORS 657.205(1). The answer is no. Instead, she received a fund from which she might receive periodic payments in the future.

The next question is whether ORS 657.205(2) broadens the category of types of funds received to cover the lump sum that claimant rolled over into her IRA. We interpret ORS 657.205(2) to refer back to the same kind of periodic payments described in ORS 657.205(1):

> "In determining disqualification for any week *under subsection (1) of this section,* if the remuneration *and payments referred to in subsection (1) of this section* cover a period greater than and include such week, a pro rata share of such remuneration and payments shall be apportioned to such week or weeks. *Such payments* made in a lump sum upon separation or in weekly or other installments shall be considered as payments with respect to weeks following separation * * *." (Emphasis added.)

Thus, to be disqualified, the payments — whether in a lump sum or not — must represent a "pension, retirement or retired pay, annuity, or other similar periodic payment" described in ORS 657.205(1). We hold that a claimant who receives a lump sum and rolls it over into a qualifying IRA has not received a "pension, retirement or retired pay, annuity, or other similar periodic payment" during the period of unemployment and, thus, is not disqualified. We will not construe ORS 657.205 so as to ascribe to the legislature the intent to produce what we perceive to be an unreasonable result. *State v. Galligan,* 312 Or 35, 39, 816 P2d 601 (1991).[10]

---

[10] Our decision in this case is in harmony with *Johnson v. Employment Sec. Dept.,* 112 Wash 2d 172, 769 P2d 305 (1989), a case remarkably similar in many respects to this one. There, the Supreme Court of Washington held that a former employee who transferred pension money from one account to another and did not have it available for immediate use without incurring a substantial penalty had not received "payment" of such funds within the meaning of a statute providing for reduction of unemployment compensation benefits for lump-sum payments of pensions; the employee had no intention of using his pension funds for current living expenses.

We hold that EAB has "erroneously interpreted a provision of law." ORS 657.282; ORS 183.482(8)(a). Accordingly, we reverse.

The decision of the Court of Appeals is reversed. The order of the Employment Appeals Board is reversed. The case is remanded to the Employment Appeals Board.