Argued and submitted November 17, 1993, reversed and remanded March 30, 1994

In the Matter of the Estate of
Lee August Heiller, Deceased.

Michael W. HEILLER,
*Appellant,*

*v.*

Timothy W. NELSON,
Thomas S. Nelson, Kevin E. Heddinghaus,
Sacred Heart General Hospital
and Allen Goldman, Personal Representative of
the Estate of Lee August Heiller, Deceased,
*Respondents.*

(50-92-03155; CA A78792)

872 P2d 26

George W. Kelly argued the cause and filed the briefs for appellant.

James R. Strickland argued the cause for respondents Timothy W. Nelson, Thomas S. Nelson, Kevin E. Heddinghaus and Sacred Heart General Hospital. With him on the brief was Theodore L. Walker.

James W. Kemper argued the cause for respondent Allen Goldman. With him on the brief was Luvaas, Cobb, Richards & Fraser.

Before Deits, Presiding Judge, and Richardson, Chief Judge,* and Riggs, Judge.

RIGGS, J.

* Richardson, C. J., *vice* Durham, J.

**RIGGS, J.**

In this probate proceeding, petitioner appeals from an order requiring a *pro rata* distribution. We reverse and remand.

In 1978, petitioner obtained a judgment against the decedent, Lee Heiller, for $73,282, which became a lien on a house owned by the decedent. Petitioner renewed the judgment in 1988. In 1989, respondents obtained judgment liens against the same house. The decedent died intestate in December, 1991. The sole asset of value in the estate was the house, which is worth $50,330.

Petitioner timely filed a claim with the estate as a secured creditor. He then timely filed a "Petition to Determine Priority of Claim," which asked the court to instruct the personal representative concerning his claim.[1] ORS 114.275. The personal representative and respondents objected, arguing that a *pro rata* distribution was required. The court held that:

> "ORS Chapter 115 does not provide for a first in time, first in right priority scheme, but rather, it provides for *pro rata* payment of any one class of creditors or claimants according to ORS 115.125(2).

> "It is the court's order therefore, that all judgment creditors of the estate, regardless of the time that a judgment attached as a lien against real property, are to be paid on a *pro rata* basis pursuant to ORS 115.125(2)."

■ On appeal, petitioner argues that ORS chapter 115 provides for a "first in time, first in right" priority scheme for judgment lien creditors whose liens attached before a decedent's death. He cites ORS 115.070, which reads, in part:

> "If the judgment was a lien against the property of the estate on the date of decedent's death it shall be treated as a claim on a debt due for which the creditor holds security."

---

[1] The petition read, in part:

"Petitioner contends he is a secured creditor and is entitled to have the property conveyed in satisfaction or partial satisfaction of the debt, or would be entitled to the proceeds of the sale to the extent of his lien subject only to the deed of trust for the benefit of [mortgagee] First Interstate Bank."

A claim "on a debt due for which the creditor holds security" can be satisfied by conveyance of the secured property or presented as an unsecured claim, at the creditor's option. ORS 115.065. The plain language of ORS 115.070 supports petitioner's argument that secured creditors whose liens attached before the death of the decedent can claim the secured property on a "first in time, first in right" basis rather than by accepting a *pro rata* distribution under ORS 115.125(2).

Respondents argue that, when ORS 23.105, ORS 115.065 and ORS 115.070 are read together, they are ambiguous. ORS 23.105 provides:

"Execution shall not issue against the property of a deceased party, *but such judgment shall be paid as a claim against the estate* of the deceased party in the manner prescribed in ORS chapter 115 [probate] or ORS 114.505 to 114.560 [small estate affidavits]." (Emphasis supplied.)

According to respondents, the reference in ORS 23.105 to a judgment being paid as a "claim against the estate" conflicts with ORS 115.065 and ORS 115.070, which permit creditors whose judgment liens attached before the death of the decedent to forgo the claims procedure and rely on their security.

On closer analysis, we find no conflict. Throughout chapter 115, the term "claim" is used in its general sense and also in the sense specific to probate. For example, ORS 115.065(1) provides that

"[a] claim on a debt due for which the creditor holds security may be presented as a claim on an unsecured debt due, or the creditor may elect to rely entirely on the security without presentation of the claim."

Claims presented to the personal representative are subject to the *pro rata* distribution plan of ORS 115.125. However, secured claims that are not presented can be satisfied pursuant to ORS 115.065(5) and (6). Because ORS 23.105 uses the word "claim" in its broader sense, it does not suggest that a secured creditor cannot rely on a security interest in lieu of presenting a claim to the personal representative.

We note that, under the argument urged by respondents, an Article 9 secured creditor or a mortgagee would have to submit claims to probate and share *pro rata* with

other creditors whose liens attached before death. ORS 115.070 explicitly provides that judgment creditors whose liens attached before the decedent's death are to be treated like other secured creditors.

■■ According to respondents, the legislative history of ORS 23.105 suggests that the legislature may not have intended to enable judgment creditors whose liens attached before the decedent's death to exhaust an insolvent estate.

> "[ORS 23.105 was intended to] delete provisions that suggest execution can issue against estate assets for a sum greater than that allocable to the creditor under ORS 115.125 * * *. Execution * * * could seriously disrupt administration and drain assets required for higher priority expenses. A judgment creditor now will be required to follow the procedures set forth in ORS 115.185 to collect the judgment if the personal representative fails to pay it. These changes are particularly significant in insolvent estates and are intended to avoid a 'race to the courthouse' system of resolving who gets paid. In these cases, probate should function in much the same way bankruptcy functions to fairly allocate the assets among creditors." Deras, *1989 Oregon Probate Practice Legislation: Claims and Small Estates*, 26 Will L J 275, 286 (1990).

We do not reach respondent's argument, however, because they have not shown that there are any ambiguities in ORS 115.065 and ORS 115.070 that would permit inquiry into legislative history. *See McKean-Coffman v. Employment Division*, 312 Or 543, 824 P2d 410, *on recon* 314 Or 645, 842 P2d 380 (1992). Respondents argue, in the alternative, that, even if petitioner had the option of relying on his security, pursuant to ORS 115.065(1), petitioner waived that option by presenting a claim. Under ORS 115.065(1):

> "A claim on a debt due for which the creditor holds security may be presented as a claim on an unsecured debt due, or the creditor may elect to rely entirely on the security without presentation of the claim."

Respondents argue that petitioner's "Petition to Determine Priority of Claim" presented "a claim on an unsecured debt due" for purposes of ORS 115.065(1). Therefore, respondents argue, petitioner cannot rely on his security. We do not understand ORS 115.065 to create a trap for unwary judgment lien creditors. The petition reiterates that petitioner

intended to rely on his security interest and sought conveyance of the secured property in satisfaction of the debt.

Reversed and remanded.